HONORABLE BARBARA J. ROTHSTEIN

UNITED STATE5 DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN ADOLPH, individually and on behalf of all others similarly situated; KERRI ADOLPH, individually and on behalf of all others similarly situated;<br><br>    Plaintiff,<br><br>v.<br><br>REEDHEIN & ASSOCIATES d/b/a TIMESHARE EXIT TEAM; MAKAYMAX INC.; HEIN & SONS INDUSTRIES, INC.; BRANDON REED, individually; and TREVOR HEIN, individually,<br><br>    Defendants. | Case No. 2:21-cv-01378-BJR<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF SETTLEMENT - 1
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

## I. RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs respectfully request:

1. Final approval of the April 11, 2022 Class Action Settlement. Ex. 1, Trask Decl.
2. Exclusion of 34 Reed Hein customers who opted-out of the class. Lechner Decl., Ex. B.
3. Entry of the $630,187,204 judgment with a covenant not to execute against the defendants ("covenant-judgment"), which was signed and notarized by the Defendants on March 3, 2023. Ex. 2, Trask Decl.

The parties negotiated an April 11, 2022 Settlement Agreement through a mediation with a former King County Superior Court judge. Among other terms, the Settlement Agreement includes 1) the assignment of Reed Hein's claims against third-parties to the Class, 2) testimony, cooperation, and document productions to support the Class's attempts at recovery from third parties, and 3) a stipulated covenant-judgment for $630,187,204. On December 30, 2022, this Court found those terms to be fair, reasonable, and adequate on a preliminary basis, and instructed the Plaintiffs to give notice to the class. Dkt. #27 at 2:4-7. In accordance with the notice campaign approved by the Court, the Class of 34,636 received 29,738 emails and 15,519 physical letters, while the settlement-notice website received 24,212 visits. Second Hancock Decl., ¶¶ 2-3, 7; Lechner Decl., ¶ 9; Dkt. #25, ¶ 31. There have been no substantive objections to the settlement.[1] Only fourteen of the thirty-six requests for exclusion ("opt-outs") fully comply with the Court's order, but Plaintiffs request all thirty-six customers be excluded because their intent is adequately clear. Finally, Plaintiffs' counsel submitted an extensive analysis concluding that approval of the settlement

---

[1] As discussed below, the one document filed with the Court and labeled as an objection does not actually object to the terms of the Settlement Agreement.

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT - 2**
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

is superior to continued litigation against the insolvent Defendants. Dkt. #25, ¶¶ 24-27. Plaintiffs respectfully seek final approval of the settlement, exclusion of class members who requested exclusion, and entry of the covenant-judgment.

## II. CERTIFICATION OF CONFERENCE

Pursuant to Section (II)(C) of Judge Rothstein's Standing Order for All Civil Cases, the parties have conferred about filing this motion. Defendants Brandon Reed, Reed Hein & Associates, and Makaymax, Inc. do not oppose the relief requested in this motion.

## III. EVIDENCE RELIED UPON

Plaintiffs rely upon the following documents, some of which were previously filed with the Court and have not been re-filed in accordance with LCR 10(e)(6).

1. Dkt. #25 (December 5, 2022 Declaration and Analysis of Claims by Plaintiffs' Counsel Gregory W. Albert)
2. Dkt. #26 (December 5, 2022 Declaration of Brandon Reed)
3. Dkt. #29 (January 13, 2023 Declaration of David D. Hancock)
4. Declaration of Carmen Albert
5. Declaration of Tallman H. Trask IV and exhibits attached thereto
6. Second Declaration of David D. Hancock
7. Declaration of Amy Lechner and exhibits attached thereto

## IV. STATEMENT OF FACTS

**a. Overview of the Case, Procedural Posture, and Class Membership**

Plaintiffs Brian and Kerri Adolph, on behalf of the certified class, allege that Reed Hein & Associates defrauded tens of thousands of working-class and middle-class families out of tens of millions of dollars. Reed Hein claimed to have a "proprietary timeshare-exit process" through which they were able to "force" timeshare developers to "take back" a customer's timeshare. Reed Hein promised customers a "one-hundred-percent money-back

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF SETTLEMENT - 3
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

guarantee" if the company was unable to deliver the promised service. Plaintiffs allege that Reed Hein had no such proprietary process, had little success extracting customers from timeshare contracts, and did not honor the money-back guarantee.

**Theories of liability**: Plaintiffs' Counsel filed forty arbitrations and three lawsuits against Reed Hein. Dkt. #25, ¶¶ 49-50. Counsel took fourteen arbitrations to evidentiary hearings and prevailed in thirteen hearings. *Id*. at ¶ 49; *see also* Dkt. #25, Ex. 18 (arbitration awards). Every theory of liability alleged in this case has already been tested and prevailed in reasoned decisions written by professional arbitrators. *See id*.

**Adequate discovery**: On January 13, 2022, Plaintiffs served Reed Hein the Plaintiffs' First Set of Interrogatories and Requests for Production in this case. Dkt. #25, ¶ 21. On February 14, 2022, Reed Hein responded with 454 megabytes of documents. *Id*. Through the public domain, public records act requests, and discovery in previous cases, Plaintiffs' Counsel has adequate documentation to discontinue discovery and move forward with settlement. *Id.* at ¶¶ 50-53.

**Arms-Length Negotiations**: On November 23, 2021, the parties began negotiating this action with King County Superior Court Judge Laura Inveen (ret.). Dkt. #25, ¶ 22. With Judge Inveen's continued involvement, the parties negotiated and eventually executed a Settlement Agreement on April 11, 2022. *Id.*; *see also* Dkt. #25, Ex. 1.

**Calculation of Damages**: Reed Hein's master customer list contains 34,636 customers. Dkt. #25, ¶ 31(a); *see also* Second Hancock Decl., ¶ 1.The customers each paid Reed Hein between $4,000 and $72,000. Dkt. #25, ¶ 24. Reed Hein took $222,386,028 in fees altogether from the customers. Dkt. #25, ¶ 31(b). Trebling each customers' damages up-to $25,000 results in $630,187,204 in trebled damages. Dkt. #25, ¶ 29. On March 3, 2023, Reed Hein CEO Brandon Reed signed and notarized a covenant judgment for $630,187,204. Trask Decl., Ex. 2 at 10.

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF SETTLEMENT - 4
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

b. **The Contents and Scope of the Settlement**

The April 11, 2022 CR2A Agreement contains the following terms (in summary):

1. Reed Hein agrees to a judgment with a covenant not to execute in the full amount requested, trebled up to $25,000 with an interest rate of 12% annually (Dkt. #25, Ex. 1, Section II, ¶ 1);

2. Reed Hein will produce contact information and the amount paid by each Reed Hein customer (*Id.* at ¶ 2);

3. Reed Hein will stipulate to class certification, any motions necessary to effect a judgment and recovery for the foregoing amount of damages (*Id.* at ¶ 3);

4. Reed Hein and Brandon Reed assigned all rights to all potential insurance bad faith claims to the Class (*Id.* at ¶ 4);

5. Reed Hein will give any truthful testimony necessary to effect class certification and third-party claims (*Id.* at ¶ 5);

6. Reed Hein assigns any claims against Trevor Hein to the Class (*Id.* at ¶ 6);

7. Reed Hein assigns any claims against Mitchell Sussman and Kenneth Privett to the Class and waives all privileges between Reed Hein and those law firms (*Id.* at ¶ 7);

8. Reed Hein assigns any claims against Ardent Law Group and its principals to the Class, waives any privileges it has with those persons, and will produce a document shown to Plaintiffs' Counsel during the November 2021 mediation containing Reed Hein's liability theories against Ardent Law Group and its principals (*Id.* at ¶¶ 8-9);

9. Reed Hein assigns any rights to claims against any timeshare developer to the Class (*Id.* at ¶ 10);

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF SETTLEMENT - 5
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

10. Reed Hein will stipulate to the reasonableness of the settlement and the covenant judgment, and will cooperate and give testimony to effect the agreement (*Id.* at ¶¶ 12);

11. Reed Hein will stipulate to every theory of liability identified in the Complaint (*Id.* at ¶ 14);

12. Reed Hein will waive all privileges with the law firms who represented it in lawsuits with the timeshare companies in the Middle District of Florida, and will produce those firms' Reed Hein files (*Id.* at ¶ 15);

13. Reed Hein will fully respond to Plaintiffs' January 14, 2022 discovery requests (*Id.* at ¶ 16).

Dkt. #25, Ex. 1.

As stated in the December 5, 2022 Declaration of Gregory Albert, accepting the foregoing terms of the agreement is preferable to continued litigation against Reed Hein and Brandon Reed because 1) Reed Hein is insolvent and unable to produce income and 2) Brandon Reed's remaining net worth would be consumed by further litigation, fees, and the costs of administering a class action settlement. Dkt. #25, ¶¶ 23-24. Mr. Albert's declaration provides a deeper analysis explaining why this agreement is preferable to continued litigation. *Id*. at ¶ 23-27. In summary:

1. Each insurance bad faith claim is colorable and potentially worth $630,187,204 before trebling under IFCA. Dkt. #25, ¶ 26(a)-(b). Although Reed Hein tendered the complaint to insurance carriers QBE and RSUI in October 2021, QBE ignored the tender for eleven months. *Id.* at ¶ 26(a)(i)-(v). RSUI refused to defend for reasons that do not appear applicable to this case. *Id.* at ¶ 26(b)(i)-(v).

2. The claims against Trevor Hein are potentially worth $10,000,000 for breach of contract and conversion. *Id.* at ¶ 26(d)(i). Mr. Hein has already testified that he

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF SETTLEMENT - 6
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

borrowed $10,000,000 from Reed Hein and never paid it back. Dkt. #25, Ex. 8 at 254:22-255:1.

3. The claims against Ardent Law are worth approximately $8,000,000. Dkt. #25, ¶ 26(e)(i). Mr. Reed will testify that he paid Ardent Law $8,000,000 because its principals told him it would file a mass-action against the timeshare company. *Id.*; *see also* Dkt. #25, Ex. 1, Section II, ¶ 9.

4. The waiver of privileges, favorable testimony, and stipulations have value to Class members seeking recovery from other parties. *Id.* at ¶ 26(f)(i)-(iii).

In contrast, continued litigation promises to demand thousands of hours of additional attorney time and costs without any realistic prospect of recovery. Dkt. #25, ¶¶ 23-24.

The parties submitted the agreement to the Court on December 5, 2022. Dkt. #25, Ex. 1. The Court entered an order granting preliminary approval of the Settlement on December 30, 2022. Dkt. #27. Plaintiffs now seek final approval.

### c. Facts Relevant to Notice and Due Process, Opt-Outs, and Objections

On December 30, 2022, the Court approved a two-step notice campaign. Dkt. #27 (order granting preliminary approval), ¶ 3; *see also* Dkt. #33 (order granting motion to amend). First, the Court instructed the Plaintiffs to send emails to all the class members with email addresses. Dkt. #27, ¶ 3. The emails contained the long-form notice which directed the recipients to the class settlement website (reedheinclass.com) for more information. Second Hancock Decl., ¶ 3. Next, the Court instructed Plaintiffs to have class-action administrator Simpluris Inc. send short-form notices on post-cards to all customers with mailing addresses who did not open their emails. Dkt. #27, ¶ 4. The short-form notices contained some information about the settlement and directed recipients to the class settlement website, *reedheinclass.com*. Lechner Decl., Ex. A.

The master customer list contains 34,636 unique names. Dkt. #25, ¶ 31(a). Out of those entries, 29,738 have unique email addresses and 21,467 have mailing addresses. Trask

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF SETTLEMENT - 7
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

Decl., ¶ 4. 2,830 of the entries have neither an associated email address nor a mailing address. *Id.*, ¶ 5. From December 30, 2022 to January 20, 2023, Plaintiffs emailed all 29,738 customers with email addresses. Second Hancock Decl., ¶¶ 2-3. 7,632 email addresses sent back cookies showing the emails were opened. Second Hancock Decl., ¶ 4. Plaintiffs then removed from the mailing list every customer who opened an email. Second Hancock Decl., ¶ 5. Plaintiffs provided the list containing the remaining customers to Simpluris on February 10, 2023. Trask Decl., ¶ 3. On March 17, 2023, Simpluris sent short-form notices to the 15,519 remaining customers with mailing addresses. Lechner Decl., ¶ 9. Simpluris skip-traced the 1,021 undeliverable customers and re-sent notices to the 871 customers with an updated address. Lechner Decl., ¶ 10. Out of those 871 skip-traced customers, only 150 postcard notices were undeliverable. Lechner Decl., ¶ 10. The short-form notice provided information about the suit and directed the reader to the settlement website (reedheinclass.com), which contained the long-form notice and more information. *See* Lechner Decl., Ex. A. It also included a phone number maintained by Plaintiffs' counsel for customers to request hard copies of the notice via mail. *Id.*

In total, 29,738 customers were sent emails. Second Hancock Decl., ¶ 2-3. 2,069 Reed Hein customers had a mailing address but lacked an email address. Trask Decl., ¶ 4. Class Counsel sent email notice to every customer with an email address and Simpluris mailed notice to every customer with a valid mailing address. Second Hancock Decl., ¶ 2-3; Lechner Decl., ¶¶ 7-9. The sum of the number of emails sent and the number of postcards mailed to customers without an associated email addresses, 31,807, is the minimum number of class members who were sent at least one form of notice during the notice campaign. Trask Decl., ¶ 4. 31,807 is 91.8 percent of the 34,636 class members.

The notice campaign has been effective. The *reedheinclass.com* website received 24,212 visits. Second Hancock Decl., ¶ 7. The phone line received greater than 300 phone calls. C. Albert Decl., ¶ 3; *see* Dkt. #29, ¶ 4. Plaintiffs' law firm mailed 240 paper copies of

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF SETTLEMENT - 8
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

the notice to those customers. C. Albert Decl., ¶ 4. Plaintiffs' law firm emailed the long-form notice to an additional 25 customers who requested it. C. Albert Decl., ¶ 5.

Simpluris received 36 requests for exclusion from the class. Lechner Decl., ¶ 12; *see* Lechner Decl., Ex. B. Not all the requests fully comply with the requirements in the notice, but their intent is clear enough to include them in the order excluding them from the class. Only 14 fully comply with the Court's order to include a name, address, telephone number, and signature. *See* Lechner Decl., Ex. B. Another 20 contain customer names, mailing addresses, and signature, but do not include telephone numbers. *See id*. The remaining two include a mailing address, but contain no telephone number and no signature. *See id*.

Simpluris received no objections to the Settlement Agreement. Lechner Decl., ¶ 13. Plaintiffs' counsel received only one purported objection, however that objection does not appear to object to the terms of the settlement. Dkt. #35. The document does not contain reasons to object to the settlement and explicitly states the objecting class member will not attend the fairness hearing, which is required for an objection. Dkt. #35. Additionally, one Class member asked to be heard at the fairness hearing, but does not appear to object to the settlement. *See* Dkt. #34.

V.    **LEGAL ARGUMENT**

a. **Class Notice Complied with the Court's Order, Rule 23(e) and (e), and Due Process**

Plaintiffs' Counsel and the appointed Settlement Administrator have completed the notice campaign as directed by the Court. The campaign was successful in providing notice to the majority of Class Members and satisfied the requirements of the Federal Rules of Civil Procedure and Due Process.

1. **Notice Satisfied the Requirements of Rule 23(c) and (e) and Due Process**

The required notice under Rule 23 is "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). *See also Siber v. Mabon*, 18 F.3d 1149, 1453

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF SETTLEMENT - 9
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

(9th Cir. 1994). Furthermore, due process does "not require actual, individual notice in all cases." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017); *see DeJulius v. New England Healthcare Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) ("due process . . . does not require *actual* notice to each party intended to be bound by the adjudication") (emphasis in original). Instead, "[c]ourts have routinely held that notice by publication in a periodical, on a website, or even at an appropriate physical location is sufficient to satisfy due process." *Id.*; *see Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) ("courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places frequented by class members, all without offending due process").

In approving the notice campaign described in the Court's Order Granting Preliminary Approval of the Class Settlement, the Court found that the content of the notice and the methods of sending the notice to Class Members "(a) meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e); (b) constitutes the best notice practicable under the circumstances to all persons entitled to notice, and (c) satisfies the Constitutional requirements regarding notice." Further, the Court found that the forms of the notice sent to Class Members "(a) apprise Class Members of the pendency of the Action, the terms of the proposed settlement, their rights and deadlines under the Settlement; (b) are written in simple terminology; (c) are readily understandable by Class Members; and (d) comply with the Federal Judicial Center's illustrative class action notices." The notice campaign complied with the Court's Order.

The Class of 34,636 received notice through three overlapping methods: 29,738 email notices containing long-form notices sent to Class Members, 15,519 postcards mailed to Class Members who did not open their emails, and 24,212 visits to a website containing the long-form notice and information about the Settlement. At least 91.8 percent of the Class Members received one form of notice. Although there are 2830 entries in the master

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF SETTLEMENT - 10
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

spreadsheet containing no addresses or emails, it is important to note that Reed Hein is defunct, has no document custodian, and cannot provide more information without employing a forensic specialist to pore through electronic documents. Considering there is no money changing hands, Plaintiffs propose that the 91.8% notice campaign was adequate and within the discretion of the Court. It may be important to note that Plaintiffs will be required to launch additional notice campaigns once settlements or other recoveries are effected in the assigned cases.

### b. The Settlement is Fair, Reasonable, and Adequate

In the Ninth Circuit, "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Service Comm's*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public interest in settling and quieting litigation," particularly class action suits. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). The decision "to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Justice*, 688 F.2d at 625. When considering a Settlement Agreement, the "question before the district court is reviewing [that agreement] is whether the agreement is fundamentally fair or just." *Moore v. City of San Jose*, 615 F.2d 1265, 1271 (9th Cir. 1980). The "cardinal rule is that the district court must find that the settlement is fair, adequate, and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

### 1. A Balancing Test Shows the Settlement is Fair, Reasonable, and Adequate

In determining if a settlement is fair, reasonable, and adequate, federal courts apply a balancing test. *Officers for Justice*, 688 F.2d at 625. The test involves the balancing of some or all of the following factors: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF SETTLEMENT - 11
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." *Id*. (citing *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978); *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977); *Flinn v. FMC Corp.*, 528 F.2d 1169 (5th Cir. 1975); and *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 448)). The list of factors "is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

### A. The claims in this case are strong and supported by thirteen reasoned arbitration awards.

The Plaintiffs have a strong case. Plaintiffs' Counsel tested the theories of liability in this case in forty arbitrations including fourteen evidentiary hearings, resulting in thirteen awards. Dkt. #25, ¶ 49; *see* also Dkt. #25, Ex. 18. The theories have proven successful nearly every time they have been raised. Dkt. #25, ¶ 49.

### B. A comparison of the risk, expense, complexity, duration, and value of the two options favors settlement instead of continued litigation.

The Settlement Agreement contains more value than continued litigation in virtually any scenario.

The Settlement Agreement assigns claims to the Class. The two assigned insurance bad faith claims are each individually potentially worth $630,187,204 before trebling under the Washington Insurance Fair Conduct Act. Other assigned claims are potentially worth greater than $18 million. At the same time, the Settlement Agreement requires that Defendants cooperate in the Class's attempts to pursue the assigned claims through testimony, waiver of privileges, and production of documents.

Continued litigation is likely to prove unreasonably costly and unnecessary for all parties. Reed Hein & Associates is insolvent and its insurers have failed to offer a defense in this case. The December 5, 2022 Declaration of Gregory Albert provides an analysis showing

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF SETTLEMENT - 12
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

how the smallest possibility of recovery through this settlement is still superior to the best-case scenario in continued litigation. Dkt. #25, ¶¶ 23-27. Mr. Albert explains why any amount Reed Hein or Brandon Reed can afford to pay after litigation, trial, and associated fees would be stretched so thinly across the class that each customer would receive a *de minimis* payment. *Id.* at ¶ 24. In contrast, even a one-percent possibility of recovering the $630,187,204 covenant judgment through other claims is more valuable than continued litigation against Brandon Reed and Reed Hein. *Id.* at ¶ 27.

### C. Rejecting the settlement poses risks to class certification.

The Defendants are acquiescing in Plaintiffs' motions because the Settlement Agreement requires them to stipulate to class certification. If the Court rejects the Settlement Agreement, Defendants will no longer be bound to class certification. Furthermore, the claims against Reed Hein's insurance carriers could evaporate because Reed Hein may have a duty to give the carriers a second chance to defend the case. If the settlement proposal is rejected, it is likely that the primary value of the Settlement Agreement will be completely lost. Furthermore, Reed Hein could move to de-certify the class and challenge any further attempts to certify. In that scenario, the classes are likely to become fragmented, more unwieldly, and only certified against opposition.

### D. Discovery is substantially completed.

Plaintiffs' Counsel has collected discovery from Defendants in forty arbitrations, and three lawsuits, including this lawsuit. In this case, Plaintiffs' Counsel sent discovery requests to Defendants Reed Hein & Associates and Brandon Reed on January 13, 2022. Dkt. #25, ¶ 21. In response to those requests, Defendants produced 454 megabytes of documents. *Id*. Those documents include lists of each Reed Hein & Associates customer, data associated with those customers, and information about the amount each customer paid to Reed Hein & Associates. *Id*. The documents have made it possible to identify the scope of the damages

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF SETTLEMENT - 13
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

and the Class Members. Furthermore, the April 11, 2022 Settlement Agreement establishes an ongoing duty to produce documents and give testimony necessary to assist the Class's future claims. The Court can reasonably find sufficient discovery was conducted.

### E. Counsel supports the Settlement Agreement and views it as the best outcome for the Class.

Plaintiffs' Counsel has significant experience in proceedings against Defendants. Plaintiffs' Counsel's firm has spent years unpacking Reed Hein & Associates' methods and tactics and gained an extensive knowledge of Reed Hein & Associates inner workings and practices. Plaintiffs' Counsel supports the Settlement Agreement and recommended the Settlement based on an objective comparison and analysis of the two options. Dkt. #25, ¶¶ 26-27.

### F. No Class members have objected to the settlement.

Class members have reacted positively to the Settlement Agreement and only a small number have objected or excluded themselves. The certified Class includes 34,636 members, all former Reed Hein customers who were harmed by the company's activities. Only 36 Class Members have submitted requests to opt out of the settlement. Only one Class Member has filed a purported objection to the settlement. The small number of exclusions and objections demonstrates the positive reaction of Class Members.

### 2. The Settlement Agreement Is the Product of Arm-Length Negotiations

In addition to the factors discussed heretofore, the Court must also be satisfied that "the settlement is not the product of collusion among the negotiating parties" when, as here, "the Settlement Agreement is negotiated prior to formal class certification." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). Factors considered include whether (1) the settlement resulted from arm's-length negotiations between experienced, capable counsel; (2) the end result achieved; and (3) whether counsel are to receive a disproportionate distribution of the settlement under a "clear sailing" arrangement providing

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF SETTLEMENT - 14
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044

for the payment of attorney fees separate and apart from class funds where fees not awarded revert to defendants rather than to the class. *See City P'ship Co. v. Atlantic Acquisition Ltd. P'ship,* 100 F.3d 1041, 1043 (1st Cir. 1996) (a presumption of correctness attached to a class settlement reached in arm's-length negotiations between experienced, capable counsel); *see also Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.,* 834 F.2d 677, 684 (7th Cir. 1987) ("[r]ather than attempt to prescribe the modalities of negotiation, the district judge permissibly focused on the end result of the negotiation. . . . The proof of the pudding was indeed in the eating.").

The Settlement Agreement is the product of an arms-length mediation with a qualified mediator, Judge Laura Inveen (ret.), more than two years of litigation, forty arbitrations, and fourteen evidentiary hearings. Dkt. #25, ¶ 49. There can be no disproportionate amount of fees to be paid to Plaintiffs' Counsel because the agreement does not include the exchange of any liquid or liquid-able assets or property. Neither Plaintiffs' Counsel nor class representative Brian Adolph will receive any money until they successfully prosecute the assigned claims in additional actions, at which point the payment of attorney fees and class representative fees will be reviewed in new approval proceedings.

### VI.   CONCLUSION

For all the above-state reasons, Plaintiffs respectfully request that their Motion for Final Approval of Class Action Settlement be granted, the thirty-six requests for exclusion be granted, and the Court enter the covenant judgment.

PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF SETTLEMENT - 15
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

DATED this 10th day of May, 2023.

_____
Gregory W. Albert, WSBA No. 42673
Albert Law PLLC
3131 Western Ave, Ste 410
Seattle, WA 98121
greg@albertlawpllc.com
(206) 576-8044
*Attorney for Plaintiffs*

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT - 16**
**2:21-cv-01378-BJR**

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA  98121
Phone: (206) 576-8044

# CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Washington that, on the below date, I caused the foregoing document to be delivered to:

**TO: Brandon Reed, Reed Hein & Associates, LLC, and Makaymax, Inc.**

c/o Daniel J. Bugbee
DBS Law
155 NE 100th St Ste 205
Seattle, WA 98125
(206) 489-3802
dbugbee@lawdbs.com
*Attorney for Defendant Brandon Reed*

c/o Steven W. Fogg
Jack M. Lovejoy
John T. Bender
Maia R. Robbins
Corr Cronin LLP
1015 Second Ave., Floor 10
Seattle, WA 98104
206-625-8600
jlovejoy@corrcronin.com
*Attorney for Defendants Reed Hein & Associates, LLC, and Makaymax, Inc.*

**Method(s) of Service:**

☐ Electronic Mail     ☐ U.S. Mail            ☐ Personal Service/ Messenger

☒ E-Service          ☐ Facsimile Transmission   ☐ Other:_____

Notes:

Service through ECF system

Dated this day, May 10, 2023, at Seattle, Washington.

*/s/ Greg Albert*

Gregory W. Albert
Albert Law PLLC

---

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT - 17**
2:21-cv-01378-BJR

ALBERT LAW PLLC
3131 Western Avenue, Suite 410
Seattle, WA 98121
Phone: (206) 576-8044