THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN ADOLPH, individually and on behalf of all others similarly situated; KERRI ADOLPH, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>REEDHEIN & ASOCIATES d/b/a TIMESHARE EXIT TEAM; MAKAYMAX INC.; HEIN & SONS INDUSTRIES, INC.; BRANDON REED, individually; and TREVOR HEIN, individually<br><br>    Defendants. | No. 2:21-cv-01378-BJR<br><br>**PLAINTIFFS' MOTION TO RECONFIRM REASONABLENESS OF SETTLEMENT**<br><br>**NOTED FOR HEARING: JANUARY 14, 2025** |

## I. INTRODUCTION

Previously, the Court entered orders in this action certifying a class, appointing Plaintiffs as class representatives, and granting final approval of the class settlement between the parties. Dkt. 23, 43. The Court expressly considered that the parties had entered into a covenant judgment settlement that assigned Reed Hein & Associates, LLC's and Brandon Reed's ("Defendants") claims against their insurers General Casualty Company of Wisconsin

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO. 2:21-cv-01378-BJR
Page 1 of 17

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

and RSUI Indemnity Company, Inc. (the "Insurers") and stipulated to a judgment against them in Plaintiffs' covenant not to execute; "the posture of this litigation"; "the value of the assigned claims"; and "the risks and benefits to the Parties involved in both settlement of these claims and continuation of the litigation." Dkt. 43 at 2. The Court found that "the Settlement Agreement was entered into after extensive arm's length negotiations by experienced counsel" and "was not the product of collusion among the negotiating parties." *Id.* And the Court found that the settlement was "fair, reasonable, and adequate." *Id.*

A reasonable judgment amount serves as the presumptive measure of damages on the assigned bad faith claims.[1] *Wood v. Milionis Constr., Inc.*, 198 Wn.2d 105, 121 (2021). To determine reasonableness, Washington courts utilize nine "*Chaussee* factors" materially identical to the factors the Court already applied in granting final approval of the class settlement. *See Wood*, 198 Wn.2d at 120-21; *see also Mut. of Enumclaw Ins. Co. v. T & G Const., Inc.*, 165 Wn.2d 255, 267 (2008) ("arm's length settlement negotiations" showed absence of "fraud or collusion"); *Mavroudis v. Pittsburgh–Corning Corp.*, 86 Wn. App. 22, 38 (1997) (reasonableness based on "the posture of the case at the time the settlements were reached"). Despite the Court's previous reasonableness determination, Defendants' insurers, the Insurers have disputed the legal effect of that determination in the bad faith action. In an abundance of caution, Plaintiffs request the Court moot the Insurers' insistence on form over substance and reconfirm the settlement's reasonableness under the *Chaussee* factors.

Whether labeled a Rule 23(e) or "*Chaussee*" reasonableness determination, both the factors and the outcome remain the same. Defendants, facing a putative class action lawsuit of

---

[1] Trial on the bad faith claims begins March 23, 2026. *General Casualty Company of Wisconsin v. Reed Hein & Associates, LLC, et al*, Case No. 2:23-cv-00725-TMC, Dkt. 47 at 1.

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO. 2:21-cv-01378-BJR
Page 2 of 17

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

approximately 40,000 class members, no insurer willing to pay to defend it, and lacking the funds to do so on their own, spent months with a third-party neutral negotiating a settlement that protected them from personal liability while providing Plaintiffs (collectively, the "Parties") with a potential path to recovery. Particularly where Washington law allows the Court to hold a hearing to make this "comparatively limited" determination on as a little as six days' notice and without any additional discovery, the Court can and should reconfirm the obvious via motion hearing: nothing about this settlement was unreasonable. Rather, it was a textbook example of why Washington State law provides the covenant judgment settlement option to defendants facing financially ruinous risk and uncertain insurance coverage.

## II.    FACTS

On October 9, 2021, Plaintiffs filed this lawsuit. Dkt. 1. On October 11, 2021, Defendants tendered it to General Casualty. Declaration of Christopher E. Love ("Love Decl.") Ex. 1.

On October 18, 2021, Reed Hein's defense counsel, Jack Lovejoy, and Mr. Reed's defense counsel and a Colonel in the United State Army, Daniel Bugbee proposed a settlement to the Adolphs' counsel. *Id.* Ex. 2 at 12, 37-38; Ex. 3 at 8, 24, 92-93, 156. The settlement proposal did not arise in a vacuum. That same day, On October 18, 2021, a General Casualty claims adjuster had advised the Insureds that she did not "think there will be coverage." *Id.* Ex. 4. Reed Hein already was liable for $2,610,000 under a judgment in favor of the State of Washington. Dkt. 22 at 4. It had paid to defend over 40 arbitrations filed by former customers represented by Plaintiffs' counsel. *Id.* Ex. 2 at 88; Dkt. 25 at 20. Each arbitration involved allegations, causes of action, liability theories, and defenses similar to those in this lawsuit. Love Decl. Ex. 2 at 88-89, 116. Thirteen out of the fourteen arbitrations that had proceeded to

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO. 2:21-cv-01378-BJR
Page 3 of 17



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

evidentiary hearings on their merits had resulted in awards for the exact amount of money the customers alleged they had paid to Reed Hein ranging from $3,412.98 to $51,858.48. Dkt. 25 at 21; Dkt. 25-18 at 1-36. Additionally, those awards included treble damages under the Washington Consumer Protection Act and attorney fees and costs often increasing those awards by tens of thousands of dollars. Dkt. 25-18 at 1-36. Plaintiffs counsel also had obtained tens of thousands of pages of discovery from Reed Hein in those arbitrations and two previous lawsuits. Dkt. 25 at 20-22.

When Defendants first proposed a settlement, Reed Hein had approximately $150,000. Love Decl. Ex. 2 at 100-101. Reed Hein risked paying damages to putative classes of approximately 40,000 people. *Id.* at 98-99. However, in Mr. Lovejoy's experience with defending class actions, that amount was insufficient to defend this lawsuit through "the precertification discovery phase," let alone pay a potential judgment in the case. *Id.* at 12, 101-102. Indeed, here Defendants did not file an answer disputing the allegations or asserting any defenses. And any defenses raised would have been similar to the failed defenses in the arbitrations. *Id.* at 116-117.

Similarly, Colonel Bugbee testified that Mr. Reed lacked funds to pay a five-figure judgment without liquidating his assets and could not pay a six-figure judgment at all. *Id.* Ex. 3 at 8, 24, 92-93, 156. Mr. Reed's assets consisted of an ownership interest in a company with $1,624,028 in debt, $10,500, an uncollectible account receivable, and a 190 Ford Bronco. Dkt. 25 at 4; Dkt. 26 at 2.

Colonel Bugbee, who specializes in bankruptcies and receiverships, further testified that Defendants "very much" wanted to avoid bankruptcy, which was not a "cure-all" or "just file and move on" option, particularly under the circumstances of this case. Love Decl. Ex. 3 at

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO. 2:21-cv-01378-BJR
Page 4 of 17



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

179-180. Mr. Reed lacked sufficient liquid assets to pay associated attorney fees and costs. *Id.* at 180-181. Additionally, filing for bankruptcy would have impacted Defendants' credit ratings and would have required Defendants to surrender personal assets. *Id.* at 181.

Defendants disclosed Reed Hein's and Mr. Reed's financial information and assets and proposed a class settlement for Reed Hein's remaining $150,000. *Id.* Ex. 5. Plaintiffs rejected it. *Id.*

As Mr. Lovejoy attested, this lawsuit was "a difficult case to resolve, given the . . . limited funds from Reed Hein and . . . no, apparently available insurance." *Id.* Ex. 2 at 105. On November 23, 2021, the Parties mediated with the Honorable Laura Inveen to get "another set . . . of neutral eyes" to "vet the possible settlement terms with a[n] extremely qualified mediator." *Id.* at 105-106. Although unable to reach a settlement at the time, the Parties continued their arms-length negotiations of potential settlement terms with Judge Inveen, including the amount of a stipulated judgment. *Id.* at 108, 112-113.

Yet the Parties remained adversarial during the negotiations. For example, on January 13, 2022, Plaintiffs propounded discovery to the Defendants. *Id.* at 114. On February 14, 2022, Reed Hein answered that discovery at its own expense. *Id.* at 115.

Likewise, Colonel Bugbee testified that Defendants negotiated to exclude from the judgment amount "people who . . . already received refunds and things like that." *Id.* Ex. 3 at 177. After negotiating those exclusions, although Mr. Reed "did not appreciate having such a large number in there because his name's on it," the Parties arrived at "the total amount that was paid by the members of the class." *Id.* at 176-177. Defendants lacked any leverage to further negotiate the judgment amount because they were "out of funds to defend" and "[i]f we

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO. 2:21-cv-01378-BJR
Page 5 of 17

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

stopped defending and [a] default was taken, this would be the number that would have been included in the CR55 hearing." *Id.* at 177-178.

On January 4 2022, RSUI denied coverage for this lawsuit. *Id.* Ex. 25. General Casualty had not provided a coverage determination beyond its preliminary assessment that the claim was not covered. Ultimately, between March 29, 2022, and April 12, 2022, the Parties executed a settlement agreement. Dkt. 25-1 at 2, 10-11. Defendants agreed to entry of a stipulated judgment in favor of Plaintiffs and a proposed class. *Id.* at 4. Defendants also assigned all "potential claims" against RSUI and "any other insurers" to Plaintiffs individually and as class representatives. *Id.* at 5. In exchange, Defendants received a covenant not to execute the judgment against them. *Id.* at 4. In support of preliminary and final approval of a class settlement, the Parties submitted declarations to the Court exhaustively detailing Defendants' lack of assets and inability to pay; Plaintiffs' counsel's previous litigation against Reed Hein; Plaintiffs' investigation and preparation of the case; the settlement negotiations; and the classes' damages. Dkt. 25 at 3-4, 9, 16-22; Dkt. 26.

Plaintiffs' reasonableness expert, Michael Wampold, has opined that the settlement was reasonable. Declaration of Michael S. Wampold ¶11. Based on his experience and consideration of the previous arbitration awards and other, similar damages awards, he has concluded that, particularly where the damages were "liquidated or otherwise documented in business records and numerically calculable," as here, juries "will not hesitate to award a plaintiff's requested damages . . . even if the damages range into the tens of millions and beyond." Wampold Decl. ¶¶16-19. Plaintiffs' expert economist, William Partin, also has analyzed Reed Hein's customer information used to calculate the judgment amount, concluded "the parties conducted a reasonable effort to calculate the appropriate damages with the

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO. 2:21-cv-01378-BJR
Page 6 of 17

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

information available for settlement purposes," and "found no indication of mathematical errors in the calculations . . . that would have resulted in a material difference." Declaration of William E. Partin at ¶19.

### III.   EVIDENCE RELIED UPON

The Declarations of Christopher E. Love, Michael S. Wampold, and William E. Partin; and the existing record in this case.

### IV.   ARGUMENT

#### A.   The Court Correctly Determined that the Settlement was Reasonable

The Court determines the ***objective*** reasonableness of the judgment amount. *Dana v. Piper*, 173 Wn. App. 761, 776 (2013). Objective reasonableness is determined through the *Chaussee* factors. *Wood*, 198 Wn.2d at 121. Because no one factor controls over the others, courts have discretion to weigh them individually. *Bird v. Best Plumbing Group, LLC*, 175 Wn.2d 756, 766 (2012).

The objective nature of this determination necessarily limits the scope of relevant evidence. The Court considers "the facts and law," *Villas at Harbour Pointe Owners Ass'n ex rel. Constr. Assocs., Inc. v. Mut. of Enumclaw Ins. Co.*, 137 Wn. App. 751, 762 (2007), and "the posture of the case" at the time of the settlement. *Mavroudis*, 86 Wn. App. at 38.

Moreover, the Court's objective reasonableness determination "will primarily rely on objective evidence"—for example, documents and testimony establishing facts known at the time of the settlement. *Steel v. Philadelphia Indem. Ins. Co.*, 195 Wn. App. 811, 829 (2016). However, the Court need not rely on "formally admissible" evidence. *Sykes v. Singh*, 5 Wn. App. 2d 721, 731–32 (2018). "[L]ess traditional evidence" such as "information . . . of a type often presented in settlement negotiations" is sufficient. *Sykes*, 5 Wn. App. 2d at 731–32.

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO.  2:21-cv-01378-BJR
Page 7 of 17



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

The subjective opinions of the parties or their attorneys are irrelevant to objective reasonableness. *See Dana*, 173 Wn. App. at 776 ("none of these factors depends" on whether a party or their attorneys subjectively "considered the settlement reasonable"). Instead, "proof of reasonableness is ordinarily established through expert witness testimony about matters like the extent of defendants' liability, the reasonableness of the amount in comparison with awards in other cases, and the expense that would have been required for the settling defendants to defend the lawsuit." *Steel*, 195 Wn. App. at 838.

Finally, this determination "does not require settling parties to prepare for a reasonableness hearing as exhaustively and expensively as if they were preparing for trial." *Sykes*, 5 Wn. App. 2d at 732. The hearing is "narrowly confined," *Hidalgo v. Barker*, 176 Wn. App. 527, 543–44 (2013), and "comparatively limited," *Hawkins v. ACE Am. Ins. Co.*, 32 Wn. App. 2d 900, 924 (2024), not a "mini-trial." *Glover for Cobb v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 717 (1983). As little as six days' notice of a hearing is sufficient. *Accord Wood*, 198 Wn.2d at 133-34. Additional discovery is not required. *Id.* at 134. Live testimony is not required where the parties' briefs and arguments provide "ample materials" for determination. *Schmidt v. Cornerstone Invs.*, Inc., 115 Wn.2d 148, 159 (1990).

Here the evidence and law existing at the time of the settlement supported its reasonableness.

1. **The evidence overwhelmingly supports the judgment amounts based on customer funds paid to Reed Hein and CPA treble damages**

The Court's determination of whether the stipulated judgment amount was within the "range of reasonableness" does not require an "'independent determination' of the extent of the insured's liability.'" *Hawkins*, 32 Wn. App. 2d at 924 (quoting *Mut. of Enumclaw Ins. Co.*, 165 Wn.2d at 267). Instead, the Court's inquiry is "narrowly confine[d] to a stand-alone

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO. 2:21-cv-01378-BJR
Page 8 of 17

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

reasonable settlement amount." *Hidalgo*, 176 Wn. App. at 543–44. Accordingly, where, as here, a case turns on "issue[s] of statutory construction and jury questions, a decision to settle for an amount within the range of the evidence is reasonable." *Martin*, 141 Wn. App. at 621.

Consideration of other damages awards creates a "basic framework from which to evaluate reasonableness" of covenant judgment settlement amounts. *CBS Corp. v. Ulbricht*, 12 Wn. App. 2d 1013, 2020 WL 622940 at *4 (Wash Ct. App. Feb. 10, 2021); *see also Sharbono v. Universal Underwriters Insurance Co.*, 139 Wn. App. 383, 404-05 (2007) ("full range of possible verdicts" must be considered in "negotiating a reasonable settlement"). Utilizing damages awards, rather than compromised, cash settlement amounts, to determine reasonableness is proper because covenant judgments are distinct from arms'-length, compromised cash settlements. Parties enter into cash settlements for "myriad reasons not related to the resolution of the issues they are litigating." *Marquardt v. Fed. Old Line Ins. Co. (Mut.)*, 33 Wn. App. 685, 689 (1983). And in a cash settlement, the parties exchange a compromised amount of a plaintiff's damages in exchange for a release from liability for the defendant and prompt, guaranteed payment. *See Ulbricht*, 2020 WL 622940, at *2, *4.

In a covenant judgment settlement, a plaintiff foregoes a guaranteed payment for a compromised amount of their damages in exchange for pursuing an uncertain recovery against the defendant's insurer for a stipulated judgment amount. *Ulbricht*, 2020 WL 622940, at *4. The stipulated judgment amount measures the "chief component" of the insured's resultant harm from an insurer's rejection of settlement offers: "the insured's liability to the [plaintiff]" for damages after a factfinder's resolution of the merits of the parties' claims and defenses and entry of a judgment. *Miller v. Kenny*, 180 Wn. App. 772, 801 (2014).

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO. 2:21-cv-01378-BJR
Page 9 of 17



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Here, the stipulated judgment amount was within the range of evidence. The judgment amount was based on the amount of customer funds paid to Reed Hein plus treble damages under the CPA. Previously, former Reed Hein customers had been awarded funds paid to Reed Hein plus treble damages in 13 out of 14 arbitrations that had proceeded to evidentiary hearings on their merits. The evidence overwhelmingly supports that a jury could and likely would have done so here. As Mr. Wampold observed, juries have no hesitation in awarding such damages—even in very high amounts—when they are liquidated or otherwise easily calculable.

2. **Plaintiffs' liability theories were "plausible"**

Under this factor the Court does not "ultimately conclude the merits of any legal theory," such as determining whether evidence conclusively negated or established Plaintiffs' claims. *Justus v. Morgan*, 2017 WL 4277678, at *7 (Wash Ct. App. Div. Two June 27, 2017). Rather, the Court determines whether the evidence and facts known to the parties at the time of settlement demonstrates the "provable liability" of Defendants, *Glover*, 98 Wn.2d at 716, or the "plausible merit" or "possibility of the legal claims." *Justus*, 2017 WL 4277678 at *6, 7.

Here, the evidence at the time of the settlements established Plaintiffs' liability theories were eminently provable, plausible, and possible. Reed Hein's customers had prevailed in 13 out of 14 arbitration that had proceeded to evidentiary hearings on similar causes of action, liability theories, and evidence. Mr. Lovejoy's testimony confirmed that it was possible that Plaintiffs also would prevail here.

3. **Defendants had not asserted any defenses, could not afford to fund a defense, and had their defenses rejected in 13 out of 14 merits hearings**

Like the merits of Plaintiffs' liability theories, the Court's reasonableness determination does not permit "relitigat[ion]" of defense theories that were "unresolved at the time of the settlement." *Wood*, 198 Wn.2d at 129. The relevant defenses under this factor are "defenses

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO. 2:21-cv-01378-BJR
Page 10 of 17



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

to liability." *Sharbono*, 139 Wn. App. at 403.  Partial "defenses" that "apportion fault, not absolve [defendants] of it" are insufficient to demonstrate "viable defenses that could have mitigated the settlement value." *Id.*

Defendants had not answered Plaintiffs' complaint, asserted any defenses, and lacked sufficient money to defend.  Accordingly, any conjecture regarding what defenses Defendants *might* have asserted is two degrees of impermissible speculation.

Even had Defendants been able to fund any defenses, though, Reed Hein likely would have raised similar defenses that had been rejected 13 out of 14 times in previous arbitration evidentiary hearings.  Thus, these unfunded and unsuccessful defenses lacked sufficient viability to mitigate the judgment amount.

### 4. **Defendants' relative fault weighs in favor of reasonableness**

Allocation of fault is not self-executing.  *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 25 (1993).  Defendants had not pleaded allocation of fault and lacked monies sufficient to pursue such a defense.  Here, too, engaging in hypotheticals regarding allocation of fault would be two-fold, impermissible speculation.

Even setting that aside, Reed Hein had never sought to allocate fault to its former customers or third parties or asserted that Mr. Reed was acting outside the scope of his employment in over 40 previous arbitrations.  Likewise, there was no evidence that Mr. Reed would attempt to allocate fault to Reed Hein, its former customers, or third parties.  Accordingly, Defendants would have been jointly and severally liable for their own proportionate shares of fault. RCW 4.22.070(1)(a), .070(1)(b).  Under these circumstances, an objectively reasonable person could conclude that this factor did not weigh against the judgment amount.

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO.  2:21-cv-01378-BJR
Page 11 of 17

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

### 5. The risks and expenses of continued litigation for Defendants were enormous

Defendants' risks were enormous. 13 out of 14 factfinders already had found Reed Hein liable to its former customers under a common nucleus of liability law and facts and awarded all damages they had requested.

Moreover, consideration of the Defendants' risks necessitates consideration of the Insurers' conduct. *See*, e.g., *Sykes*, 5 Wn. App. 2d at 734 (fact that insurer's denial of defense "could have resulted in bankruptcy and ruin" for settling defendant weighed in favor of reasonableness).

Here, Defendants faced a lack of insurance coverage for these claims and lack of monies sufficient to complete preliminary discovery, let alone defend the case through trial and verdict. Defendants faced not just the possibility of being found liable to certified classes of its former customers. They also faced the possibility of bankruptcy proceedings for which they could not pay, would have caused them multiple harms, and would not even have completely resolved their personal liability.

Plaintiffs also face inherent risks in a covenant judgment settlement. *Ulbricht*, 2020 WL 622940, at *4. Covenant judgments are "distinct from cash settlements" in that they are not a guaranteed recovery; rather, they are an agreement to seek recovery from a specific asset. *Bird*, 175 Wn.2d at 765. Any recovery at all is contingent on paying the fees and costs to prosecute a subsequent bad faith action to a subsequent liability finding and damages verdict against the Insurers. *Id.* at 765.

Thus, the Court must consider the possibility that Plaintiffs may recover nothing on the judgments from the Insurers. The contingent nature of the settlement in this case justifies a larger covenant judgment amount measured by the potential awards for full damages they

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO. 2:21-cv-01378-BJR
Page 12 of 17

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

forewent than if the parties had entered into a cash settlement with sure payment on a date certain. *Ulbricht*, 2020 WL 622940 at *4.

      6.    **Defendants lacked any ability to pay a likely verdict in this case**

A defendant's "limited ability to pay a judgment in excess of their liability coverage" weighs ***in favor*** of the reasonableness of a covenant judgment settlement. *Besel v. Viking Ins. Co. of Wash.*, 146 Wn.2d 730, 739 (2002) (settlement reasonable where the settling defendant "could not pay any judgment against him").

As discussed above, at the time of the settlement Defendants faced a lack of insurance coverage, leaving them only their personal assets as a certain payment source for any judgment and facing the risk of bankruptcy. Defendants lacked any ability to pay a six-figure verdict and could not pay a five-figure verdict without liquidating personal assets. Defendants also faced the prospect of paying a verdict in favor of classes of tens of thousands of former customers for the amounts they paid to Defendants—which, even individually, often exceeded five figures— as well as CPA treble damages. Simply put, a possible verdict exceeded Defendants' ability to pay by several orders of magnitude.

      7.    **No evidence of collusion, bad faith, or fraud exists**

Courts cannot "infer bad faith, collusion, or fraud merely based on innuendo and speculation alone" and absent direct evidence. *Martin*, 141 Wn. App. at 622–23. Instead, the conduct of the parties leading up to the settlement may demonstrate their absence or presence. For example, arms' length negotiations between the settling parties demonstrates their absence. *Id.* at 130-31. In contrast, conduct such as plaintiff's counsel ghost writing letters to the insurer for the defendant, the defendant's independent coverage counsel working to undermine the insurer's efforts to minimize liability, and the parties' entry into a "kickback" agreement where

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO. 2:21-cv-01378-BJR
Page 13 of 17

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

the defendant would receive a portion of any recovery in the subsequent bad faith litigation may demonstrate bad faith, collusion, or fraud. *Water's Edge Homeowners Ass'n v. Water's Edge Assoc.*, 152 Wn. App. 572, 595-96 (2009).

Here, the Parties settlement negotiations arose from 13 previous arbitration awards against Reed Hein on similar claims, the absence of any insurer willing to pay to defend this lawsuit, and Defendants' inability to pay to do so. Even then, the parties reached a settlement after six months of negotiations, much conducted through a well-respected third-party neutral and retired judge. And the Parties remained adversarial, such as propounding and producing discovery and negotiating the stipulated judgment amount as much as the available information and circumstances allowed. None of the "highly suspect and troublesome" evidence from *Water's Edge* demonstrating bad faith, collusion, or fraud exists in this case.

### 8. Plaintiffs extensively investigated and prepared these lawsuits

The evidence also demonstrated that Plaintiffs extensively investigated and prepared their case. Plaintiffs' counsel previously had obtained tens of thousands of pages of relevant discovery in over 40 previous arbitrations against Reed Hein and two earlier lawsuits. They obtained yet more discovery in this case. And they had successfully prosecuted 13 out of 14 arbitrations to awards based on this common nucleus of facts and evidence. Accordingly, Plaintiffs were sufficiently informed and prepared to assess the merits of their claims, the viability of any defense theories, and the potentially recoverable damages in this case at the time of the settlement.

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO. 2:21-cv-01378-BJR
Page 14 of 17

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

9. **The Court's Reasonableness Determination Accounts for the Interests of Non-Released Parties**

This factor also weighs in favor of reasonableness. Defendants were the only remaining defendants. And the interests of non-party Insurers were adequately protected by holding a hearing to determine the reasonableness of the stipulated judgment amounts. *Wood*, 198 Wn.2d at 132.

B. **The Court Should Reconfirm Reasonableness Based on Briefing and a Regular Motion Hearing**

Here, the Court should make this determination based on the briefs and a single motion hearing limited to presenting argument. Due process only requires that the Insurers receive reasonable notice and an opportunity to be heard. *Howard v. Royal Specialty Underwriting, Inc.*, 121 Wash. App. 372, 379 (2004). "Reasonableness" depends on the circumstances. *Red Oaks Condo. Owners Ass'n v. Sundquist Holdings, Inc.*, 128 Wn. App. 317, 324 (2005).

Here, the Insurers have had "an opportunity to participate in discovery" in the bad faith lawsuit for over two-and-a-half years. *Howard*, 121 Wn. App. at 379. Love Decl. ¶3. Indeed, they have propounded 4 interrogatories, 18 requests for production, and at least 10 subpoenas, including correspondence regarding the settlement; and participated in 19 depositions, including noticing video depositions of all counsel involved in negotiating the settlement. *Id.* Having had an opportunity to conduct all discovery the Insurers felt was necessary regarding the settlements, there is nothing left to do but be heard on the settlement's reasonableness. That should be accomplished through briefing and a standard motion hearing.

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO. 2:21-cv-01378-BJR
Page 15 of 17

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## V. CONCLUSION

The outcome of the Court's previous, well-supported reasonableness determination should not differ simply from applying the *Chaussee* label. No prolonged trial substitute is needed to reconfirm the Court's determination that the settlement was reasonable.

SIGNED this 22nd day of December, 2025.

*Certify that this motion is 4,200 words in length in compliance with the Local Civil Rules*.

PFAU COCHRAN VERTETIS AMALA PLLC

By: /s/ Christopher E. Love
Darrell L. Cochran, WSBA No. 22851
Thomas B. Vertetis, WSBA No. 29805
Christopher E. Love, WSBA No. 42832
*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO. 2:21-cv-01378-BJR
Page 16 of 17



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

# CERTIFICATE OF SERVICE

I, **Thien Lau**, hereby declare under penalty of perjury under the laws of the United States of America that I am employed at Pfau Cochran Vertetis Amala PLLC and that on today's date, I electronically filed the foregoing with the Clerk of the Court using the **CM/ECF** system which will send notification of such filing to the following:

Daniel J. Bugbee
DBS Law
155 NE 100th St Ste 205
Seattle, WA 98125
(206)489-3802
dbugbee@lawdbs.com
*Attorney for Defendant Brandon Reed*

Steven W. Fogg
Jack M. Lovejoy
John T. Bender
Maia R. Robbins
CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104
(206)625-8600
sfogg@corrcronin.com
*Attorney for Defendants Reed Hein & Associates, LLC, and Makaymax, Inc.*

DATED this 22nd day of December, 2025.

By: */s/Thien Lau*
Thien Lau
Legal Assistant

PLAINTIFFS' MOTION TO RECONFIRM
REASONABLENESS OF SETTLEMENT
NO.  2:21-cv-01378-BJR
Page 17 of 17



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654