Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN ADOLPH, individually and on behalf
of all others similarly situated; KERRI
ADOLPH, individually and on behalf of all
others similarly situated,

          Plaintiffs,

     v.

REED HEIN & ASSOCIATES d/b/a
TIMESHARE EXIT TEAM; MAKAYMAX,
INC., HEIN & SONS INDUSTRIES, INC.;
BRANDON REED, individually; and
TREVOR HEIN, individually,

          Defendants.

No. 2:21-cv-01378-BJR

**INTERVENOR GENERAL CASUALTY INSURANCE COMPANY'S RESPONSE TO PLAINTIFFS' MOTION TO CONFIRM REASONABLENESS OF SETTLEMENT**

## I.  INTRODUCTION

Intervenor General Casualty Company of Wisconsin ("General Casualty") respectfully requests that the Court deny plaintiffs' motion to "reconfirm" the reasonableness of the covenant judgment resolution of this case.  The motion is untimely, having been made nearly *two years* after the entry of final judgment in this case and after the dispositive motion deadline in the lawsuit pending between the parties *General Cas. Company of Wisconsin v. Reed Hein & Associates LLC, d/b/a Timeshare Exit Team, et al.*, No 2:23-cv-00725-TMC (the "coverage action").  Under the

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 1
Case No.:  2:21-cv-01378-BJR

4915-4814-8101, v. 1

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

Washington statutory authority for holding such hearing, RCW 4.22.060, they are to be conducted prior to the settlement and in no event after the entry of final judgment.

In the event the Court proceeds with a reasonableness hearing, it should hold that this case was not objectively worth $630,187,204 or anything close to that figure. The figure assumes that Reed Hein never legitimately earned a penny in its approximately nine years of operation and that all of its revenue must be refunded to customers and subject to maximum treble damages under the Washington Consumer Protection Act. The settlement thus involved the stipulation to a class broader than the subclasses requested in the Complaint to include all customers of Reed Hein.

The settlement was entered into without any negotiation as to the amount of the covenant judgment. Indeed, the settlement agreement *does not even have an amount,* Dkt. 25-1 at 2-11, with determination of the amount ultimately left to calculations performed by plaintiff's counsel's office. The settlement also ignores significant and obvious liability problems such as the fact that (1) many of the class members' Consumer Protection Act claims would be time barred under the four year statute of limitations; (2) most class members are not similarly situated to the Adolphs or the purported test-case arbitration plaintiffs; and (3) the data plaintiffs' counsel used to calculate the settlement is clearly unreliable, especially without the input of former Reed Hein employees with knowledge of the data.

Therefore, General Casualty requests the following relief:

1.    Based on the procedural violations detailed herein, the result from the Plaintiffs' motion would properly be to deny their requested RCW 4.22.060 determination.

2.    If the substance is reached regarding the amount, which was unspecified in settlement negotiation then non-opposed in court, the measured reasonable settlement amount

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 2
Case No.: 2:21-cv-01378-BJR

4915-4814-8101, v. 1

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

should be substantially below even the Washington Attorney General's professionally audited $58 Million.

3.    In all events, requested discovery is warranted because General Casualty cannot present specific facts essential to justify its opposition to Plaintiffs' motion without testimony related to demonstrating the bases relied upon for the stated covenant judgment amount, which was unspecified until *after* the underlying parties fully executed settlement papers in April 2021.

## II. STATEMENT OF FACTS

### A.    There has Not Been a Previous *Chaussee* Hearing

On May 10, 2023, the Adolphs filed an unopposed motion for final approval of the class action settlement and entry of a $630,187,204 judgment against the defendants. (Dkt. 37). The legal arguments in support of approval were directed only to whether the settlement satisfied the requirements of Fed. R. Civ. P. 23(e) and the due process requirements for notifying class members. (*Id.* at pp. 9-15). The motion did not also seek approval of the settlement under *Chaussee v. Md. Cas. Co.*, 60 Wn. App. 504, 510, 803 P.2d 1339 (1991), for the purpose of binding Reed Hein's insurers as well as the class. Because the parties did not address the *Chaussee* factors in their stipulated motion, this Court did not have any reason to address those factors at the May 16, 2023 hearing, as the hearing transcript reflects. *See Shyre* Decl., Ex. A. On May 19, 2023, the court entered an Order Granting Final Approval of Class Settlement. (Dkt. 43). The order described the settlement, made note of the class members who had effectively excluded themselves from the settlement, and directed entry of the class action judgment. (*Id.*) The order made no reference to consideration of the *Chaussee v. Md. Cas. Co.* factors.

In a January 25, 2024 filing in this matter, the Adolphs acknowledged that class action approval and a *Chaussee* hearing were two different things, and that the Court had only conducted

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 3
Case No.: 2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

the former proceeding. (Dkt. 47 at p. 3 ll. 8-13).  The Adolphs asked for a status conference to advise whether it would: "set a status conference to advise whether it will determine the reasonableness of the covenant judgment amounts entered in this case." (*Id.*)  The following day, the Court declined to set the conference, noting that no reasonableness motion had been filed. (Dkt. 48).  Despite the above guidance, the Adolphs never moved for an insurance reasonableness determination until now.

Even in the later coverage litigation, the Adolphs continued to maintain that no reasonableness hearing had occurred. When responding to an interrogatory in the coverage case about notice to General Casualty of the fairness hearing in this case, the Adolphs objected that the interrogatory "appears to conflate an insurance bad-faith reasonableness hearing with a Fed. R. Civ. P. 23(e)(2) approval hearing based on fairness" and noted that "General Casualty was not entitled to notice under Fed. R. Civ. P. 23(e)(2) of a class action settlement hearing." (Exh. B. to Syhre Decl.) Both the Adolphs and General Casualty filed motions for summary judgment on the dispositive motion cutoff in the coverage action on November 24, 2025. In their motion, the Adolphs changed course, arguing that that rule Fed. R. Civ. P. 23(e)(2) was in fact interchangeable with a *Chaussee* reasonableness hearing and had the same legal effect on the insurer's liability as a *Chaussee* hearing.  (Coverage Action Dkt. 53 at pp. 22-23)  In response, General Casualty argued that the two hearing types served very different purposes and could not be substituted for one another.  (Coverage Action Dkt. 63 at pp. 23-26).  The Adolphs filed the current Reasonableness motion on December 22, 2025, the date dispositive reply briefs were due in the coverage action.

**B.    <u>Procedure in This Case</u>**

This case was first brought as one of many private arbitrations against Reed Hein pursuant to an arbitration clause in the Reed Hein customer contracts. (Dkt. 25 at ¶ 21).  For reasons that

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 4
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

are not entirely clear, the Adolphs were permitted to bring a court suit despite the arbitration clause

based on Reed Hein's nonpayment of arbitration fees. *Id*. The Adolphs then brought this suit as a

putative class action.

The Adolphs' individual claim is based on an alleged March 2020 contract with Reed Hein

for services in helping them exit from a timeshare they purchased in 2019. (Dkt. 1 at ¶ 12) Reed

Hein failed to either exit the Adolphs from the timeshare or honor a money-back guarantee that

was part of the agreement.  (Id. at ¶¶ 22-23).  The Adolphs also sought to represent a class

consisting of three subclasses "for the maximum time period allowable by law":

> **Class 1:** all persons who received legally invalid exits from their
>
> timeshare agreements or were not exited from their timeshares at all
>
> ("**non-exits**").
>
> **Class 2**: all persons who had to obtain their own exits after paying
>
> Reed Hein to do so for them ("**self-exits**").
>
> **Class 3**: all persons who obtained 'harmful' exits by either paying
>
> additional money to the timeshare companies or suffering other
>
> negative repercussions ("**harmful exits**").

Dkt. 1 at 24.

**C.**    <u>**The Settlement in This Matter and Its Supposed Justifications**</u>

As part of the settlement, Reed Hein agreed to a stipulated motion to certify a much broader

class than the three identified in the complaint consisting of:

> All persons who paid fees to Reed Hein for services to terminate
>
> their timeshare obligations, except those persons who received
>
> refunds of the fees that they paid.

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 5
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

Dkt. 18 at p. 2. The above definition removed the reference to the statute of limitations found in the Complaint as well as the substantive requirements of the original proposed class definitions.

The settlement agreement executed by the parties does not contain a dollar amount. Dkt. 25-1 at 2-11. The calculation of amount of the covenant judgment for the class was purportedly calculated by the Adolphs' counsel, Greg Albert based on his understanding of Reed Hein's business records. (Dkt. 25 at ¶ 29) But at the May 16 2023 fairness hearing, he represented that "I believe that Mr. Reed submitted a declaration as to basis for the damages. If he hadn't, I know that Mr. Hancock did." (Exh. A to Syhre Decl. at p. 4 ll. 12:19.) The Albert declaration (whoever did prepare it) purported to identify 34,636 Reed Hein customers from Reed Hein's "founding through today" paying a total of $222,386,028. The declaration then applied maximum discretionary treble damages to all customers. (*Id* at ¶ 31). Finally, the declaration subtracted the payments and treble damages of customers determined to have received refunds to reach the $630 million figure. (*Id*. at ¶¶ 32-48). In later testimony, Mr. Albert described receiving customer spreadsheet data with instructions from Reed Hein's counsel because the format was "byzantine" meaning "very complicated." (Deposition of Greg Albert, p. 133, attached as Exh. M. to Syhre Decl.) No one from Reed Hein actually assisted with the identification of the class members or calculation of the purported class damages.

Drew Voth, General Casualty's economic expert, has reviewed the data sets considered, and testifies that the $630 million figure relies on at least two unvalidated data sets for customer payments and refunds and the data contains an undetermined amount of third-party payment data. (Voth Decl. ¶ 4) The data also differ by tens of millions of dollars from Reed Hein's published financial statement. *Id*. Specifically, the latest-dated Reed Hein financial statement shows a total of **$182.6** million of both earned exit revenue from customers who received exits, and unearned

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 6
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

revenues associated with customers who did not receive exits.  *Id.* ¶10.  This is substantially less than **$222,386,028** used as the base number for the settlement, reinforcing the inference that calculations used to support the settlement were inaccurate.   For a variety of reasons, Mr. Voth testifies that "neither Plaintiff nor anyone can reasonably rely on the Payment Data to support the Claim." Also, the basis for the refund data used in the damages calculation has not been identified. *Id*. ¶8.

The difficulty in interpreting Reed Hein's Salesforce Databases is further illustrated by the several declarations provided by former Reed Hein employee Catherine Cerbone, whom General Casualty would like to depose to address the issues raised in Mr. Voth's Declaration.  In a prior action brought by the State of Washington, Ms. Cerbone provided three declarations disputing the State's interpretation of Reed Hein sales data and in one case stated plainly that "interpreting Reed Hein's salesforce data is not always intuitive."   (March 15, 2021, Declaration of Catherine Cerbone, ¶ 4, attached as Exh. C to Syhre Decl.).  Ms. Cerbone confirmed in another  declaration that the data sets include not just data for the defendant in this case, but also for another company known as Reed Hein Canada, which uses the same records system but had separate operations and finances, and notably, is <u>not</u> an insured under the General Casualty policies.  (July 25, 2021, Declaration of Catherine Cerbone at ¶4, attached as Exh. D to Syhre Decl.).

The other major pillar of justification for the settlement is results of 14 arbitrations litigated to hearing in which the Adolphs' counsel had success in 13. (Dkt. 25 at ¶ 49).  The 13 successful awards almost all involved contracts with Reed Hein entered into in 2018 or later. (Dkt. 25-18 at p. 1-36).

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 7
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

| Claimant | Date of Contract | Description |
|---|---|---|
| Messmer | March 28, 2018 | Award of disgorgement of fees based on Reed Hein's failure to disclose information about settlement with Orange Lake resort |
| Case | August 2016 | Refund and treble damages based on Reed Hein "failing to take any action for years" and then "refusing to refund the alleged 'money-back guarantee'" |
| Pesana | March 2018 | "no question that claimant was entitled to a refund at 12:00 am on October 3, 2020" and Reed Hein admitted he was entitled to a refund based on money-back guarantee. |
| Baker | Not Stated | No narrative but refund guarantee is mentioned in the award. |
| Andes | November 10, 2018 | Refund of payment and treble damages based on failure to provide timely assistance, failure to disclose suit, and refusal to refund advanced funds when demanded. |
| Carter | April 20, 2020 | Case involved a three-year moneyback guarantee but arbitrator awarded refund and treble damages based on Reed Hein's inactivity on the file. |
| Heard | Not Stated | No narrative, award of $10,238.94 |
| Jones | April 27, 2018 | Award of refund and treble damages based on failure to obtain exit and refusal to honor money-back guarantee |
| Mahaffey | October 23, 2019 | Award of disgorgement of fees based on Reed Hein's failure to obtain satisfactory resolution with Orange Lake resort and subsequent refusal to return funds. |
| Jerido | January 27, 2018 | After one year of no progress claimant requested a refund and was told she was not eligible. Claimant was awarded refund and treble damages. |
| Guimond | Not Stated | Default award based on Reed Hein's refusal to participate |
| Reif | April 2020 | Claimant had not been exited, and claim was subject to a three-year money-back guarantee which had not expired but Reed Hein breached the agreement and claimant was entitled to a refund and treble damages. |
| Herman | January 9, 2018 | Reed Hein breached agreement by failing to honor the money back guarantee |

The complaint in this action states that Reed Hein began its operations in 2012 and began selling timeshare exit services no later than 2013. Dkt. 1 at ¶¶ 6,7,28.

The complaint itself acknowledges that not all Reed Hein customers had experiences similar to the Adolphs or the successful arbitration claimants. The complaint alleges that in the past "Reed Hein has had some minor success" in getting timeshare companies to rescind contracts

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 8
Case No.: 2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

with its customers.  *Id*. at ¶48.  The complaint acknowledged that this and other methods were often sufficient to gain the acquiescence of timeshare companies that were generally reluctant to sue Reed Hein customers initially.  Id. at ¶¶49,50,54.  According to the complaint, in 2018, timeshare companies shed their reluctance to enforce the timeshares and began suing Reed Hein and its customers.  *Id.* at 64.  Moreover, the complaint alleges that Reed Hein's vendors stopped taking referrals from Reed Hein in the summer of 2018 and Reed Hein was unable to find a substitute vendor until the summer of 2019, "creating a massive backlog of customers."  (Id. at ¶68).

The issues surrounding Reed Hein's practices were thoroughly litigated in an action brought by the State of Washington in 2020, captioned S*tate of Washington v. Reed Hein & Associates LLC, et al.*, King County Superior Court No. 20-2-03141-1 SEA.  In that case, Reed Hein's backlog of customers potentially owed refunds was a major point of contention in a motion for a preliminary injunction.  In its motion, the state claimed based on its expert's calculations that Reed Hein's exposure to refund claims was $58,269,610.56 with $6,460,650.21 of that being on accounts aged three years or more.  (Exh. E to Syhre Decl.)  In response, Reed Hein disputed even this data, claiming that Reed Hein's business records reflected 21,261 customers as exited from their timeshares as of May 20, 2020, and that the State's information was out of date.  (Exh. F. to Syhre Decl.)

In the lawsuit brought by the State, Reed Hein procured declarations from several past satisfied customers testifying that they were exited from their timeshares and relevant facts, such as the potential duration of the exit and possible effects on credit were disclosed to them. (Exhs. G, H, and I to Syhre Decl.)

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 9
Case No.:  2:21-cv-01378-BJR

4915-4814-8101, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

The lawsuit brought by the state was complex and highly contested, with 304 docket entries. The lawsuit was resolved by a consent decree entered on September 28, 2021 stipulating to entry of judgment against Reed Hein and related individuals and companies for $22,000,000 with all but $2,610,000 of that suspended on the condition that defendants comply with dozens of stipulations, essentially making it impossible for Reed Hein to continue to operate. (Dkt. 22 at p. 4-24) Reed Hein paid the unsuspended portion of the judgment as consumer restitution. (Exh. J. to Syhre Decl.)

**D.    The Insurers Were Not Invited to Participate in the Negotiation of the Settlements**

Counsel for plaintiffs and defendants in this action have all testified that they did not attempt to involve the insurers in the mediations or discussions leading to a resolution in this case. (Lovejoy Dep. pp 42-43, Bugbee Dep. pp 192-193; Albert Dep. p.p. 164., attaches as Exhs. K, L, and M to Syhre Decl.)

### III.  ARGUMENT

**A.    The Fed. R. Civ. P. 23(e) hearing this Court Conducted was not a RCW 4.22.060 *Chaussee* Hearing and Served a Different Purpose**

Settlement of any class action that purports to bind absent class members requires court approval under Fed. R. Civ. P. 23(e). The need for such approval is to ensure fairness to *class members*, who, though they will be bound by the proposed settlement, are not directly represented in the negotiations. There is a concern that such settlements tend to primarily favor the interests of class counsel or class representatives while neglecting the interests of absent class members. For these reasons, Rule 23(e) requires the reviewing court's attention to the following factors such as the adequacy of the representation provided to the class and adequacy of the relief provided to the class. A settlement in excess of $630,000,000 million in exchange for forgoing $150,000 in Reed

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 10
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

1  Hein's remaining assets understandably satisfied this test. There is no concern in such a hearing

2  with regard to whether the proposed settlement is excessive. Nothing in the Fed. R. Civ. P. 23(e)

3  review requires the reviewing court to consider whether the settlement amount is excessive or

4  unfair to a nonparty insurer.

5      By contrast, the *Chaussee* hearing requires the court to measure the settlement under the

6  "*Chaussee* factors, as contemplated in *Besel*, and to consider that the sole purpose of the judgment

7  was to serve as the presumptive measure of damages in the bad faith suit." *Werlinger v. Warner*,

8  126 Wn. App. 342, 351, 109 P.3d 22, 27 (2005). In contrast to the 23(e) hearing, the *Chaussee*

9  hearing is concerned with whether the proposed settlement is excessive and thus an unfair measure

10  of damages in an insurance bad faith suit.  The notion that this Court has already conducted such

11  an inquiry in this case is therefore without merit.

12  **B.    The Plaintiffs Waived Their Right to Seek a Reasonableness Hearing**

13      Insurance covenant judgment approval hearings are equitable proceedings governed by

14  RCW 4.22.060.  *Bird v. Best Plumbing Grp., LLC*, 175 Wn.2d 756, 767, 287 P.3d 551 (2012).  The

15  statute has specific timing requirements for seeking approval.  It states:

16      **(1)**  A party **prior to entering into a release, covenant not to sue,
    covenant not to enforce judgment,** or similar agreement with a

17      claimant shall give five days' written notice of such intent to all
    other parties and the court. The court may for good cause authorize

18      a shorter notice period. The notice shall contain a copy of the
    proposed agreement. A hearing shall be held on the issue of the

19      reasonableness of the amount to be paid with all parties afforded an
    opportunity to present evidence. A determination by the court that

20      the amount to be paid is reasonable must be secured.  **If an
    agreement was entered into prior to the filing of the action, a**

21      **hearing on the issue of the reasonableness of the amount paid at
    the time it was entered into may be held at any time prior to**

22      **final judgment upon motion of a party**.

23

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 11
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 ● (206) 689-8501 FAX

4915-4814-8101, v. 1

1    Under the above language, approval should be sought prior to the entry of the agreement

2  and in no case, after final judgment.  Final judgment was entered in this matter on June 15, 2023.

3  Dkt. 45.  This motion was thus filed more than two years and six months after the latest date for

4  filing such a motion contemplated by RCW 4.22.060.

5    The delay in seeking a reasonableness hearing prejudiced General Casualty.  Had a

6  reasonableness hearing been timely sought, General Casualty would have had the opportunity to

7  seek appellate review of any unfavorable decision well in advance of the trial date in the coverage

8  action and properly consider the impact of the reasonableness hearing result in its litigation and

9  settlement strategy in the coverage action.  Now, any decision will come less than two months

10  before the scheduled trial date in the coverage action and long after the dispositive motions cutoff.

11  The Adolphs self-servingly propose a hasty reasonableness determination here, at the expense of

12  General Casualty's due process right to adequately oppose their excessively high stipulated

13  settlement figure.  Their invitation to give this process short shrift is not an acceptable path.

14    There is also no equitable basis for allowing the Adolphs to undo their own conscious

15  litigation decision.  The Adolphs elected to forgo an unambiguous insurance reasonableness

16  hearing in favor of treating the class action fairness hearing as a *de facto* reasonableness hearing

17  that they would later argue bound General Casualty.  General Casualty, in turn, did not attend the

18  Fed. R. Civ. P. 23(e) hearing, on the ground that it did not believe its rights were being litigated in

19  that hearing.  General Casualty's belief was justified based on the substance and grounds for the

20  motion before this Court in May 2023, which applied Fed R. Civ. P. 23(e) standards alone.   Both

21  sides should now be preparing for the upcoming trial in the coverage action.  There will be no

22  opportunity for the parties to file dispositive motions regarding the effect of any subsequent

23  hearing in this action.

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 12
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

**C.**     **The Settlement is Unreasonable under the *Chausse* Factors**

There are nine factors the trial court must consider to determine if a settlement is reasonable:

> (1) [T]he releasing party's damages; (2) the merits of the releasing party's liability theory; (3) the merits of the released party's defense theory; (4) the released party's relative fault; (5) the risks and expenses of continued litigation; (6) the released party's ability to pay; (7) any evidence of bad faith, collusion, or fraud; (8) the extent of the releasing party's investigation and preparation; and (9) the interests of the parties not being released.

*Bird v. Best Plumbing Grp., LLC*, 175 Wn.2d 756, 766, 287 P.3d 551, 556 (2012).  The settling parties have the burden to prove reasonableness.  *Bird*, 175 Wn.2d at 766.

The purpose of an insurance covenant judgment reasonableness hearing is to protect the nonparty insurance company *against excessive settlements*, resulting from the fact that the judgment debtor insured has become indifferent to the amount of the settlement once they are protected by the claimant's covenant not to execute.  *Besel v. Viking Ins. Co.*, 146 Wn.2d 730, 737-38, 49 P.3d 887, 891 (2002) ("We are aware that an insured's incentive to minimize the amount of a judgment will vary depending on whether the insured is personally liable for the amount").  An insured may even encourage offers of unreasonably high settlements, where "an insured may settle for an inflated amount to escape exposure …."  *Chaussee v. Md. Cas. Co.*, 60 Wn. App. 504, 510, 803 P.2d 1339 (1991).   A reasonableness hearing "protect[s] insurers from excessive judgments especially where … the insurer has notice of the reasonableness hearing and has an opportunity to argue against the settlement's reasonableness."  *Bird v. Best Plumbing Grp., LLC*, 175 Wn.2d 756, 765-66, 287 P.3d 551 (2012).

Here, it is difficult to even characterize the transaction as a "settlement" because it simply represents what plaintiffs' counsel understands to be the maximum conceivable recovery for every

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 13
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

Reed Hein customer since Reed Hein's founding regardless of the customer's circumstances. Plaintiffs' attempt to nevertheless justify the settlement as reasonable, not through examples of courts finding similar settlement to be reasonable, but instead by reliance on the general maxim that a "settlement may fall within the range of reasonableness and bind the insurer and yet be greater than a hypothetical settlement the insurer might have achieved had it timely participated and fulfilled its obligations to its insured." *Hawkins v. ACE Am. Ins. Co.*, 32 Wn. App. 2d 900, 924, 558 P.3d 157 (2024).   The remarks in *Hawkins* are *dicta* because the holding in *Hawkins* is that the reasonableness hearing held in the trial court was of no effect because it was conducted without notice to the insurer and the insurer was therefore not bound by the outcome. *Hawkins,* 32 Wn. App. 2d at 912 ("ACE argues the superior court's imputation of the reasonableness determination to ACE violated ACE's right to due process because it was not given notice of the hearing. We agree.").

While reasonableness is a "range"—that is, there are multiple possible settlements reflecting the reasonable value of a case—it does not follow that a settlement that assumes without specific evidence that Reed Hein's customers from its inception until its termination was entitled to a full refund and maximum discretionary treble damages is reasonable.  The way plaintiffs portray the rule, one would imagine that a reasonableness hearing is largely a formality.  The inquiry would be whether it would have been *impossible* for the plaintiff to recover the amount claimed regardless of the improbability or speculative nature of such an outcome.  But the reported cases include multiple examples of courts reducing the amount such settlements based on the realistic supportable value of the case.  *Howard v. Royal Spec. Underwriting*, 121 Wn. App. 372, 374, 89 P.3d 265, 266 (2004) (serious injury case where trial court reduced settlement from $20,000,000 to $17,400,00); *Owners Assn v. Meadow Valley, LLC*, 137 Wn. App. 810, 813, 156

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 14
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

1  P.3d 240, 242 (2007) (trial court reduced fee portion of settlement from $2.4 to $1.6 million);

2  *Werlinger v. Warner*, 126 Wn. App. 342, 344, 109 P.3d 22, 23 (2005) (trial court reduced

3  $5,000,000 settlement to $25,000); *Mut. of Enumclaw Ins. Co. v. T&G Constr., Inc.*, 165 Wn.2d

4  255, 269, 199 P.3d 376, 383 (2008)(trial court reduced settlement by $ 300,000).  Plaintiffs also

5  cite *Sharbono v. Universal Underwriters Ins. Co.*, 139 Wn. App. 383, 405, 161 P.3d 406, 418

6  (2007) for the proposition that "that a defendant must consider the full range of possible verdicts

7  in negotiating a reasonable settlement."  But plaintiffs cite no case for the proposition that the

8  parties or the reviewing court should consider only the *impossibly high* outcomes in evaluating a

9  settlement.  Here a proper consideration of the *Chausse* factors shows that the settlement in this

10 case was unreasonably excessive and that further discovery is warranted.

### 1.      Releasing Party's Damages

12         The calculation of class damages is highly dubious.  The calculation of the class damages

13 was based on the Declaration of Greg Albert in this action and his interpretation of Reed Hein's

14 business records.  Mr. Albert was *attempting* to calculate the payments of all Reed Hein customers

15 that had not received refunds and then applied maximum discretionary damages to each such

16 customer.  As set forth above, there is no reasonable basis for this calculation because Mr. Albert

17 did not testify to any knowledge of the records or the basis for the amounts recorded in them.

18 Moreover, though Reed Hein was a party to the settlement, no principal or person with knowledge

19 at Reed Hein testified to the validity of these calculations.

20         The damage claim further disregards the fact that the class members received $2,610,000

21 in restitution as part of the settlement with the state. The proposed judgment therefore represents

22 a clear double recovery for the class to that extent at a minimum.

23

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 15
Case No.:  2:21-cv-01378-BJR

4915-4814-8101, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

Moreover, the damage calculations do not account for the fact that Reed Hein's customer record keeping system is shared with at least one other company, Reed Hein Canada, an entity that was neither a defendant in this case, nor an insured under General Casualty's policies.

Further, the award assumes that the court would award discretionary treble damages to the entire class under the Consumer Protection Act.  Given the diversity of experiences of the class members from the allegations in the complaint alone, it would be difficult if not impossible to justify awarding full discretionary treble damages to each class member without individual adjudications.  The class runs the gamut from individuals that received negotiated exits of their timeshares to customers like the Adolphs in the late stage of Reed Hein's existence who received neither services nor a refund.

### 2.     The Merits of the Releasing Party's Liability Theories

The Adolphs mistakenly rely on the unpublished Court of Appeals decision in *Justus v. Morgan*, No. 47913-3-II (June 27, 2017) to argue that any settlement is supported under this factor so long as the theory is "plausible" to has a "possibility" of merit.  The *Justus* Court did not prescribe that standard.  In the context of reviewing an individual bodily injury settlement amount, it was reviewing the reasonableness determination made in the trial court under a deferential abuse of discretion standard of review and simply noted that "we hold that the trial court's limited assessment of Justus' liability theories does not transform its overall reasonableness ruling into an abuse of discretion."  Nothing in *Justus* or elsewhere suggests that the *trial court's task* is to do anything other than weigh this *Chaussee* factor objectively, and determine whether the liability theories' merits are consistent with the ultimate settlement.  Nor did the *Justus* trial court ignore statute of limitations issues, it simply ruled that the defense applied only to the intentional tort claims.

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 16
Case No.:  2:21-cv-01378-BJR

4915-4814-8101, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

Here, the claims arising during half of the time period Reed Hein was operating were subject to a Consumer Protection Act time bar. RCW 19.86.120. Therefore, even under the most deferential view of the Adolphs' claims, the claims of most Reed Hein customers for treble damages under the Consumer Protection Act would be excluded for perhaps tens of thousands of customers.

The Adolphs and many other Reed Hein customers during the final few years of its operations have claims for refunds and potentially for treble damages as individual claimants. But the alleged basis for the damages in the settlement is plaintiff counsel's interpretation of a spreadsheet to determine the total revenue earned by Reed Hein during its approximately nine-year lifespan and then subjecting each customer transaction to maximum discretionary treble damages up to the Consumer Protection Act's $25,000 cap. The settlement therefore assumes that *every* customer in Reed Hein's history had a rock-solid case for complete restitution and treble damages such that no compromise at all is warranted. The "settlement" is not really a settlement at all.

Even if one could extrapolate a success rate from the 14 arbitrated cases, that success rate of 13 out of 14 would be 92.85% rather than 100%. But there is no reasonable basis to assume that a 92.85% rate would hold for all Reid Hein customers. Even the Complaint acknowledges that Reed Hein's efforts were met with initial success in getting timeshare companies to acquiesce to exits until Reed Hein began encountering extreme pushback and legal problems with resorts challenging exits in approximately 2018.

There is a subset of Reed Hein customers who have stronger claims. These customers have the following characteristics (1) after a reasonable opportunity to obtain an exit for the customer, Reed Hein failed to exit the customer from the customer's timeshare; (2) the customer's contract

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 17
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

with Reed Hein was subject to a money back guarantee, and (3) Reed Hein did not honor the money back guarantee.  The Adolphs fit in the above subset along with most of the successful test case arbitration claimants.   But the Adolphs and the arbitration claimants are self-selected claimants, not a representative sample of the set of **all** Reed Hein customers.   Presumably, a customer from 2014 whose timeshare company agreed to a recission of the timeshare contract would not seek out plaintiff's counsel to file an arbitration.  Indeed, it is hard to imagine that Reed Hein could have taken money from more than 34,000 (if that is even the correct number) customers over nine years, failed to obtain any results for these customers or honor its money-back guarantee, and was sued so *few* times—and then only in the last three years of its existence.

Both the complaint in this case and the testimony in the lawsuit brought by the state reflect that most of Reed Hein's early customers received at least some version of what they bargained for and do not have the straightforward refund claims that the Adolphs' have.  The settlement is thus vastly excessive because it fails to account for this fact and assumes that every customer has a straightforward claim.

The arbitration claimants also have a much stronger case for discretionary treble damages under the Consumer Protection Act than passive class members precisely because they brought individual litigation against Reed Hein and acted to advance the policy behind the statute.

### 3.     The Merits of the Released Party's Defense Theory

Again, approximately two thirds of discretionary damages in the settlement consist of discretionary treble damages under the Washington Consumer Protection Act. RCW 19.86.090. Pursuant to RCW 19.86.120, the statute of limitations for bringing a Consumer Protection Act claim is four years.  Thus, a customer who, for example, obtained their own exit from a timeshare in 2015 for which Reed Hein refused to issue a refund would not be able to make a timely

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 18
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

Consumer Protection Act claim in 2021 when the Adolphs filed this lawsuit.  But the settlement assumes that none of the Consumer Protection Act claims for customers going as far back as 2012 or 2013 are barred. This assumption is unrealistic and unreasonable.  The requirement that the claim be within the maximum period allowed by law was part of the original proposed class definition in this case.

### 4.    The Released Party's Relative Fault

Because this is not a comparative fault tort scenario, General Casualty agrees that this factor is not relevant.

### 5.    Risks and Expense of Continued Litigation

It is certainly true that there was no benefit to Reed Hein or its owners in continuing with— or even prevailing in—this lawsuit.  Had class certification been defeated, that would have meant that Reed Hein and its owners would continue to face individual claims from self-selected customers with clear claims to refunds.  By entering into a class action settlement and judgment that they did not have to pay, the defendants insulated themselves from such claims by everyone other than people who opted out of the settlement.  This does not lend any support to the reasonableness of the settlement figure and, if anything, tends to show that both sides had incentives to enter into an overbroad class definition (every customer ever) and inflated damages figure (Reed Hein's alleged historical earnings trebled).

The Adolphs also argue that *their risk* in pursuing the assigned claims justifies a higher covenant judgment settlement.  They rely on the unpublished opinion of the Court of Appeals in *CBS Corp. v. Ulbricht*, Nos. 79490-6-I, 79590-2-I), 2020 Wash. App. LEXIS 278, at *12 (Ct. App. Feb. 10, 2020).  This Court should skeptically approach consideration of factors that deviate from what *Chaussee* specifically considered, i.e., "the risk and cost of proceeding to trial" in the

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 19
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 ● (206) 689-8501 FAX

4915-4814-8101, v. 1

*underlying* proceeding that was settled. *Chaussee v. Md. Cas. Co.*, 60 Wn. App. 504, 513, 803 P.2d 1339 (1991). The Court should also reject plaintiffs' argument that a "larger covenant" amount is appropriate based on the risk, especially when the absence of "sure payment" from an underlying defendants' insurer is because of that insurer's *proper* conduct. (Plaintiffs' Motion, p. 12 ln 26 – p. 13 ln. 1)

While a covenant judgment may be higher than a hypothetical cash settlement, that will primarily be because the insured has no incentive to negotiate the amount of the settlement, the very evil against which the *Chaussee* hearing is meant to guard. Giving undue weight to the fact that settlement is for a covenant judgment would be manifestly unfair to the insurers. The "risk" the Adolphs are referring to is the probability that the Adolphs will not prevail on their bad faith claims against the insurers in the coverage action. By the Adolphs' logic, if it appears that the insurers' conduct was justified at the time of settlement, a higher covenant judgment is justified in order to increase the settlement value of their claim against the insurer to make up for that fact. In any event, by their own admission, the Adolphs were not giving up anything beyond $150,000 in collectible assets by entering into the settlement. Because it is absurd to reason that the plaintiffs' damages in this case are higher because the insurers may have good defenses in the coverage litigation, this factor should not be given significant weight.

### 6.    Defendants' Limited Ability to Pay Does not Support the Settlement

The Adolphs point to Reed Hein's limited assets as supporting the settlement. In the covenant judgment context, this factor does not clearly point in any specific direction. For example, if instead Reed Hein had tens of millions of dollars in cash reserves, the Adolphs would no doubt argue that a high covenant judgment was necessary to induce the Adolphs to allow Reed Hein to keep those assets. The fact that Reed Hein had so few assets simply means that the Adolphs

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 20
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

1   were risking nothing by entering into this settlement, because the opportunity cost in the alternative

2   of this settlement was the Adolphs' continued litigated pursuit of the $150,000 that remained in

3   Reed Hein's bank account.

4        **7.        Any Evidence of Bad Faith, Collusion or Fraud**

5        The Adolphs point to "arms-length" negotiations.  These may indeed have occurred with

6   respect to the status of pending arbitrations, the claims that would be assigned,  and the extent to

7   which Reed Hein's principals would cooperate in future proceedings.  But the Adolphs do not

8   point to any negotiations over the actual amount of the covenant judgment settlement, which is

9   what is before the Court.  The settlement between the parties **does not even contain an amount**,

10  precluding any possibility of arms-length negotiation over it. Instead, Reed Hein turned over its

11  largely indecipherable business records to the Adolphs' counsel and **allowed the Adolphs'**

12  **counsel to choose the amount** that would become part of the covenant judgment.

13       Reed Hein also opted into this lawsuit by refusing to pay its arbitration fee and waiving a

14  contractual requirement that the Adolphs submit to arbitration. Absent that, there would be no class

15  action.  After the settlement and consent decree with the state, Reed Hein ceased to be a going

16  concern and had no ability to generate additional money for its owners without risking liability for

17  the suspended balance of the civil penalty.

18       As Mr. Bugbee testified, bankruptcy would not have been an effective option for Reed

19  Hein or its principals.  This is because the claims of intentionally fraudulent conduct were not

20  likely subject to bankruptcy discharge.  An overly-inclusive class action settlement that Reed Hein

21  and Brandon Reed did not have to pay was a much better option.  Any class member that did not

22  opt out would be barred by the judgment from making a separate claim against any of the

23  defendants in the lawsuit.   The defendants thus had every incentive to make the settlement class

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 21
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

and damages as broad and comprehensive as possible regardless of the merits of the class claims. Brandon Reed, and his company Happy Hour Media, have even attempted to use the judgment defensively against subsequent lawsuits against Happy Hour Media, a Brandon Reed owned company that was not even a defendant in this case. *Patrick v. Ramsey*, No. C23-0630JLR, 2024 U.S. Dist. LEXIS 32666, at *11-12 (W.D. Wash. Feb. 23, 2024).

Because there is no evidence of negotiation concerning the amount of the covenant judgment and because the class was admittedly used as a bankruptcy substitute that was made more effective by broadening the class definition beyond what even the Adolphs requested in their Complaint, this factor weighs strongly against reasonableness.

**8.    Extent of Investigation and Preparation**

This individual matter was not litigated in any substantial way. The parties resorted almost immediately to settlement discussions culminating in the covenant judgment.

**9.    Interests of the Parties not Being Released**

The parties not being released are the insurers who may be liable for the covenant judgment amount if found to be reasonable. *Water's Edge Homeowners Ass'n v. Water's Edge Assocs.*, 152 Wn. App. 572, 592, 216 P.3d 1110, 1121 (2009). In *Waters Edge*, the court held that the trial court properly considered the fact that the insurer had no meaningful opportunity to participate in a settlement in holding that this factor weighs against a finding of reasonableness. *Id*. at 592. Here, it is not disputed that the insurers were not invited to participate in the negotiations or mediations or even informed that they were taking place. Given the size of the proposed judgment and the substantial questions about the validity and liability assumptions behind the calculations that led to it, this factor warrants allowing additional targeted discovery in advance of any hearing as identified below.

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 22
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

**D.**   **Additional Targeted Discovery is Necessary for a Fair Adjudication of reasonableness**

To support its opposition to the reasonableness hearing General Casualty requests depositions of the following targeted list of individuals.

### 1.   Catherine Cerbone

Ms. Cerbone is a former Reed Hein employee responsible for Reed Hein's document productions in the State of Washington's suit against Reed Hein. She also participated in several of the arbitrations brought against Reed Hein as Reed Hein's speaking agent.  (Albert Dep. p. 135) Her declarations in the State of Washington's lawsuit go into great detail in explaining aspects of Reed Hein's finances and customer records.  She testified in one declaration that several of the customers in Reed Hein's Salesforce system was shared with a separate company, Reed Hein Canda, that was distinct from Reed Hein & Associates. (July 25, 2021 Declaration of Catherine Cerbone, ¶ 8, attached as Exh. __ to Syhre Decl.) This raises the problem that many of the customer accounts forming the basis of the damages action are not actually customers of the defendant in this action or of General Casualty's insured.   In the State of Washington action, she provided three declarations disputing the state's interpretation of Reed Hein sales data and in one case stated plainly that "interpreting Reed Hein's salesforce data is not always intuitive."  (March 15, 2021 Declaration of Catherine Cerbone, ¶ 4, attached as Exh. C to Syhre Decl.)  General Casualty proposes that the deposition be limited to three hours.

### 2.   Brandon Reed

Mr. Reed was the CEO of Reed Hein and a defendant in this action.  Mr. Reed would be able to provide insight into the financial data and Reed Hein's accounting practices that form the basis for the judgment damages.  He will also provide insight into why he, or anyone else with knowledge of Reed Hein's finances, did not submit a declaration validating the damages

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 23
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

calculations.  He would also provide testimony as to Reed Hein's historical practices and the extent to which the Adolphs and the arbitration claimants are similarly situated to other historical customers.  General Casualty proposes that the deposition be limited to three hours.

### 3.    Brian Adolph

Brian Adolph is one of the two named plaintiffs  in this action. General Casualty requests a deposition of him of approximately one hour to confirm the details of his individual claim as class representative.  General Casualty proposes that the deposition be limited to one hour.

### 4.    David Hancock

David Hancock possesses first-hand knowledge regarding the Adolphs' calculation of the alleged damages, which includes the underlying reasoning as to why and how certain customers were included in the Adolph class.  With this information, and on General Casualty's information and belief, Mr. Hancock then co-engineered the expanded settlement class definition and calculated the alleged damages. Moreover, at the fairness hearing, Mr. Albert represented that Mr. Hancock may have been involved in preparing the declaration supporting class damages.  His testimony will necessarily lend itself to assessing the first *Chaussee* factor regarding the value of the alleged damages sought. Based on depositions to date in the insurance coverage and bad faith case before Judge Cartwright, General Casualty has strong reason to believe that Hancock was unreasonably overinclusive in determining the amount of class members' alleged damages. General Casualty proposes that the deposition be limited to two hours.

### 5.    Michael Wampold

Mr. Wampold is a new expert witness first disclosed to General Casualty on December 22, 2025 through the filing of this motion.  He signed a sixty-six-paragraph declaration arguing for the reasonableness of the settlement in this case.  General Casualty could not have known of this

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 24
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1

witness prior to the discovery cutoff in either case.  General Casualty proposes that the deposition be limited to three hours.

## IV.  **CONCLUSION**

For the reasons stated above, General Casualty respectfully requests that the Court deny the settling parties untimely Chaussee motion pursuant to RCW 4.22.060.  To the extent the court considers the merits it should, after granting the targeted discovery requested by General Casualty hold that the settling parties have failed to meet their burden of showing that reasonable for a defunct company to settle a claim for approximately three times its earnings, with the calculation of those earnings left to the plaintiff based on the defendant's indecipherable data.

DATED this 30 day of January, 2026.

*s/ Michael Handler*
Michael D. Handler, WSBA #25654
Daniel L. Syhre, WSBA #34158
Sarah P. Pozzi, WSBA #55744
Forsberg & Umlauf, P.S.
401 Union St., Suite 1400
Seattle, WA  98101
Phone:  (206) 689-8500
mhandler@foum.law
dsyhre@foum.law
spozzi@foum.law
*Attorneys for Intervenor General Casualty*
*Company of Wisconsin*

Intervenor General Casualty Insurance Company's Response to
Plaintiffs' Motion to Confirm Reasonableness of Settlement – 25
Case No.:  2:21-cv-01378-BJR

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET, SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4915-4814-8101, v. 1