**Honorable Barbara J. Rothstein**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN ADOLPH, individually and on behalf of all others similarly situated; KERRI ADOLPH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>REED HEIN & ASSOCIATES d/b/a TIMESHARE EXIT TEAM; MAKAYMAX, INC., HEIN & SONS INDUSTRIES, INC.; BRANDON REED, individually; and TREVOR HEIN, individually,<br><br>Defendants. | No. 2:21-cv-01378-BJR<br><br>**INTERVENOR GENERAL CASUALTY COMPANY OF WISCONSIN'S DEPOSITION ANALYSIS BRIEF**<br><br>**ORAL ARGUMENT REQUESTED** |

**CLYDE & CO US LLP**
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

## I. INTRODUCTION

Intervenor General Casualty Company of Wisconsin ("General Casualty") deposed witnesses as permitted, and their testimony revealed the inherent unreasonableness of the $630,187,204, settlement figure that was crafted solely by the plaintiffs. The testimony proved the parties had not negotiated that settlement amount at arm's length. By deposing Brandon Reed and Brian Adolph, two parties to the "CR 2A Stipulation and Settlement Agreement" ("CR2A"), General Casualty shed light on this lawsuit's record that previously lacked any pre-2026 alternative to the plaintiffs' one-sided point of view. Brandon Reed's deposition testimony confirmed that Reed Hein's non-exited customers were only one-third or less of its total customers. This new evidence alone would demonstrate a reasonable settlement range for this case that was far below the judgment amount. But personal injury attorney Michael Wampold, General Casualty's third deposed witness,[1] could not identify a single Reed Hein customer's timeshare exit that was factored into the amount. Every witness supported that under any fair and permissible application of the *Chaussee* factors, only a small fraction of the judgment could ever pass independent scrutiny.

## II. DEPOSITION TESTIMONY ANALYSIS

### A.     Merits of Liability and Defenses Theories, and Actual Damages

Brandon Reed testified that despite signing the CR2A, he did not actually believe he and Reed Hein had liability to customers that had received the exits they bargained for. He also confirmed that the non-exited customers that did not receive refunds were a small subset of all

---

[1] This Court's Second Order re Briefing and Discovery Dkt. 73 referenced five witnesses, three of which General Casualty was able to serve.  It was unable to serve two others, as multiple attempts to serve Catherine Cerbone and David Hancock (in two states) were unsuccessful before the discovery completion deadline. Declaration of Michael D. Handler in Support of General Casualty's Deposition Analysis Brief ("Handler Decl."), at ¶ 6.

INTERVENOR GENERAL CASUALTY'S DEPOSITION ANALYSIS BRIEF – 2
Case No.:  2:21-cv-01378-BJR

**CLYDE & CO US LLP**
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

Reed Hein customers. Mr. Reed also confirmed the published balance sheets of Reed Hein. The balance sheets specified that Reed Hein's "Unearned Revenue" was from its *non-exited* customers. Handler Decl., **Ex. A**.  As of December 31, 2019, Reed Hein's records showed that approximately $78 Million was paid to Reed Hein by all non-exited customers. By mid-2020, that cumulative total incrementally increased to $80,359,720.87. Reed Hein's accounting team provided the balance sheets to Mr. Reed himself; he signed Reed Hein's tax returns. Reed Tr., Handler Decl. **Ex. B** at 26:1-3, 88:17-89:8; 100:23-101:2; 107:8-110:18. This $80.359 Million total is far below the $222 Million figure plaintiffs' counsel Gregory Albert testified was his calculation of *all* fees Reed Hein had ever charged to *all* customers. Dkt. 25. Further, Mr. Reed's testimony set the percentage of non-exited customers within the range of the Washington Attorney General ("AG")'s audited total of $58 Million, as stated in its related consumer protection proceeding's July 2020 filings. Dkt. 69-5, at 2. As owner of Reed Hein, Mr. Reed testified that "between two-thirds and 80 percent of Reed Hein's customers … achieved timeshare exits." And, for all customers exited out of their contracts, Reed Hein would not owe refunds. Reed, 88:17-89:8; 110:3-23.

Mr. Wampold's testimony was revealed to have substantial flaws. First, he has no professional background in class actions, or in evaluating the reasonableness of consumer class actions settlements like the one here. Wampold Tr., Handler Decl. **Ex. C**, 70:9-13. Second, his lack of independence is evidenced by his assumptions regarding his Declaration's fact and legal citation passages provided by plaintiffs' lawyers at "PCVA." *Id.* at 49:6-51: 24. Third, his selective disregard of facts about all prior arbitration awards on which his opinions were based, including that *all but one* of these arbitrations were substantially or entirely *unopposed* by Reed Hein at the time of entry. *Id.* at 61:9-62:16, 65:21-66:14.

INTERVENOR GENERAL CASUALTY'S DEPOSITION ANALYSIS BRIEF – 3
Case No.:  2:21-cv-01378-BJR

**CLYDE & CO US LLP**
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

Mr. Wampold's opinions on the first three *Chaussee* factors reveal all of these improper bases, and more. The *only* class action judgment he considered involved PCVA, and required fixed rates for work under DSHS employment contracts to be used for calculations of amounts owed. *Id.* at 57:4-23. His Declaration's only cited personal experience involved multi-patient dental malpractice lawsuits, which he admittedly settled for less than the arbitration results in similar cases. *Id.* at 53:23-56:5.

Regarding the 2021-2022 Reed Hein arbitrations that were Mr. Wampold's only bases for disregarding Reed Hein's defenses, he termed as "flyspecking" (and therefore not "significant") any details of (a) when they were held; and (b) whether Reed Hein wasn't opposing them. *Id.* at 61:20-62:8. Reviewing the 13 Arbitration Awards in Dkt. 25-18, half of the Claimants (7 of the 14) made *unopposed* demands at their hearing – Reed Hein essentially defaulted. Except for one January 2021 ruling (Messmer), all the arbitrations were heard *after* the September 2021 AG lawsuit's Consent Order. Mr. Reed testified that Reed Hein had to shut its doors due to this settlement order. Reed, 55:1-57:5. Thus, these arbitrations may have been defended procedurally, but they were not representative of the substantive merits of Reed Hein's defenses.

Mr. Wampold also ignored other arbitration-related details. He declined to consider any of the parties' related settlement communications, even though he agreed this Court's discretion permitted consideration of other reasonable indicia of the settlement value. For comparison, Reed Hein received an offer to settle the Mahaffey arbitration for one-third of the amount awarded in the 2022 arbitration Reed Hein did not attend. Wampold, 99:20-103:9; 105:4-106:15. Mr. Wampold's testimony improperly cut off analysis of the insured's prior experiences with *settlements* of similar claims, as though they were unrelated to a *settlement's* range of reasonableness.

INTERVENOR GENERAL CASUALTY'S DEPOSITION ANALYSIS BRIEF – 4
Case No.:  2:21-cv-01378-BJR

**CLYDE & CO US LLP**
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

Moreover, Mr. Wampold identified no case law demonstrating that a "default judgment amount" was the measure of a settlement's reasonableness, let alone that approved a settlement involving payment of a business's historical gross revenue plus treble damages without regard to whether the individual claims were time-barred. Even a default judgment would be based only on what Mr. Adolph's lawsuit asked for, which was to recover during the "maximum time period" (Complaint, at 24) but not for those expanded settlement class members who were beyond the CPA's four-year statute of limitations. Adolph Tr., Handler Decl. **Ex. D**, 41:11-21.

To Mr. Reed, "the details matter about that number, $630,187,204," as they should to all parties and the Court.  Reed, 140:9-20. Although plaintiffs' counsel seized on Mr. Reed's term that he "rolled with" a damages amount if *his own* attorneys figured it out and came up with it, they did not do so: Reed Hein's attorneys calculated no amount that was ever filed with this Court. *Id.* at 146:11-25. Moreover, Mr. Reed maintained that he and Reed Hein did *not* owe payments to exited customers. *Id.* at 88:7-89:8; 110:3-23. Therefore, the only reasonable inference from all of Mr. Reed's testimony is that he did not sign the CR 2A with *any* belief that it stated his or Reed Hein's *actual* scope of liability.

### B.    Bilateral Litigation Risks Were All Undeveloped in *Adolph* Before Settlement

The testimony taken shows that both sides faced unknown risks of continued litigation. Mr. Adolph was never deposed before settlement, and he recalled no discovery requests being made to test whether he was typical of all or any other class members. Adolph, 33:8-14; 34:21-35:9. Yet, Mr. Wampold's opinions essentially ignored any risks faced by the class, even though he conceded the Court could consider Reed Hein's AG-proceeding defenses.  His opinions were largely directed to replace the *Chaussee* factors with a different test that would be easier to satisfy. Accordingly, he would "not quite" agree to summarize the *Chaussee* test as "what amount a

INTERVENOR GENERAL CASUALTY'S DEPOSITION ANALYSIS BRIEF – 5
Case No.:  2:21-cv-01378-BJR

**CLYDE & CO US LLP**
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

reasonably prudent person in the [insured's] position would have settled for on the merits of the case." Wampold, 79:4-21; 124:5-11. But he offered no well-founded alternative to this statement quoted from §203:43 of Couch on Insurance, a treatise often cited in Washington insurance law.

### C.      Bad Faith, Collusive Negotiations of Amounts Were Not at Arm's Length

The witnesses uniformly confirmed that the CR2A never contained *any amount* when the parties signed their settlement agreement.  Dkt. 25-1 at 2-11. Mr. Wampold could not recall seeing a "contemporaneous" record of Reed Hein supplying any specific amounts or a single numerical calculation for the total settlement figure. He conceded that two plaintiffs' attorneys "did the calculations", yet he recalled Reed Hein's counsel providing plaintiffs' counsel unmonitored data access and merely requesting plaintiffs' counsel to also assign some value to refund reductions. Wampold, 96:4-8; 131:21-133:21. As General Casualty stated in its original response brief, plaintiffs were left to conjure an amount, to which defendants were indifferent. There were no arm's length negotiations with any Reed Hein representatives over the amount of the settlement.

### III.  CONCLUSION

General Casualty's briefing and evidence is supported by Mr. Reed's testimony. The Court's experience will recognize that Mr. Wampold's testimony functions as a supplemental plaintiffs' brief. An evidentiary hearing to elicit live testimony from expert and fact witnesses remains an essential component of the Court's affording due process here. If the Court were nevertheless to rely on the current record, its newly-available evidence further demonstrates what expert Drew Voth's Declaration already supported: non-exited customers' payment of a small minority share of the fees allegedly paid to Reed Hein renders plaintiffs' covenant judgment amount unreasonable. In light of the settling parties' substantial burdens, approval of that settlement amount is inherently contrary to any faithful application of the *Chaussee* factors.

INTERVENOR GENERAL CASUALTY'S DEPOSITION ANALYSIS BRIEF – 6
Case No.:  2:21-cv-01378-BJR

**CLYDE & CO US LLP**
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

DATED this 20th day of March, 2026.

s/Michael D. Handler
Michael D. Handler, WSBA #25654
Daniel L. Syhre, WSBA #34158
Sarah P. Pozzi, WSBA #55744
Clyde & Co US LLP
401 Union St., Suite 1400
Seattle, WA  98101
Phone: (206) 689-8500
michael.handler@clydeco.com
dan.syhre@clydeco.com
sarah.pozzi@clydeco.com
Attorneys for Intervenor General Casualty
Company of Wisconsin

INTERVENOR GENERAL CASUALTY'S DEPOSITION ANALYSIS BRIEF – 7
Case No.:  2:21-cv-01378-BJR

CLYDE & CO US LLP
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX